**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
JIA WANG LIN,
*on behalf of himself and others similarly situated*

                                    Plaintiff,          **Case No: 21-cv-07614**


                    v.


CANADA GOOSE US, INC.
                                    Defendant.
-----------------------------------------------------------------x


# NATIONWIDE CLASS ACTION
# FIRST AMENDED COMPLAINT
# JURY TRIAL DEMANDED


TROY LAW, PLLC
*Attorneys for the Plaintiff, and proposed Rule 23 Class*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 103
Flushing, NY 11355
Tel:     (718) 762-1324

Plaintiff JIA WANG LIN (hereinafter referred to as "Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this complaint against Defendant CANADA GOOSE US, INC. (hereinafter "Defendant").

## INTRODUCTION

1.      This action is brought by Plaintiff JIA WANG LIN, on behalf of himself and on behalf of proposed class (the "Class"), as more fully defined below, of similarly situated consumers throughout the United States to redress the pervasive pattern of fraudulent, deceptive and otherwise improper advertising, sales, and marketing practices that Defendant continues to engage of its clothing products throughout the State of New York and throughout the country Canada Goose products (collectively, the "Products").

2.      Discovery may reveal that additional products are similarly misrepresented and Plaintiffs reserves the right to add them to the definition of the "Products."

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act.

4.      The proposed Class involves more than 100 individuals.

5.      A member of the proposed Class is a citizen of a state different from the Defendant, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs.

6.      A member of the proposed Class is a citizen of a state different from the Defendant, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs.

7.      Venue is proper in this district under 28 U.S.C. §1391, because a substantial part of the events and omissions giving rise to the claims occurred in this district.

8.     Specifically, Defendant CANADA GOOSE US, INC. has purposely availed itself of the New York consumer market, and distributes the Products to locations at and throughout New York, where the Products are purchased by thousands of consumers each day.

9.     Plaintiff JIA WANG LIN purchased the Products from a retail location within the District.

10.     Plaintiff JIA WANG LIN is, and at all times relevant to this action has been, a resident and citizen of New York, domiciled in New York.

**DEFENDANT**

11.     Corporate Defendant CANADA GOOSE US, INC. is a foreign business corporation organized under the laws of Delaware, with a principal office in New York.

12.     Plaintiff JIA WANG LIN, and members of the nationwide Class justifiably relied on Defendant's representations that the Product would be identical in all material respects at each point of distribution.

**STATEMENT OF FACTS**

13.     CANADA GOOSE US, INC. manufactures clothing products, the majority of which contain down. Defendant advertised and falsely claimed that "Our down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, enabling us to manufacture lighter jackets without sacrificing warmth."

14.     "Hutterite" refers to a group of Christian communities largely in Canada with a reputation for raising excellent geese.

15.     From 2014 to 2020, Canada Goose advertised that all of its down blends contain Canadian Hutterite down on its website under the fur and down section.

16.     In April 2020, Canada Goose removed all mentions of Hutterite down from its website. However, its authorized retailers including Nordstrom, Bergdorf Goodman, Saks Fifth

Avenue, and Bloomingdales continued to advertise Canada Goose jackets as using the highest quality Canadian Hutterite down.

17.     From on or about November 13, 2021 Canada Goose has reinserted mentions of Hutterite Down back onto its website. Under the materials and care section of each item, Canada Goose continues to falsely advertise that "Our down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, enabling us to manufacture lighter jackets without sacrificing warmth".

18.     The undue emphasis on the Hutterite origin of the down as an indicator of its thermal performance has no factual basis.

19.     A down's thermal performance is tied only to the lifespan of the species to which the bird from which it is plucked belongs, and the maturity of the individual bird before it is plucked, and not (within a given species) tied to how or by whom the bird is raised.Therefore, Hutterite goose husbandry would make no difference one way or the other to the quality of the down obtained from a given species of goose.

20.     However, geese typically live longer than, and are plucked later than, ducks. Mountain Warehouse, a reputable retailer of down jackets, advises consumers that "[g]oose down is regarded as the warmest and lightest, but duck down or jackets that use a combination are often much cheaper and still keep you very warm." (https://www.mountainwarehouse.com/us/expert-advice/down-jacket-guide/)

21.     According to a Chinese government report of its investigation into Canada Goose products, goose down accounted for only 16.8% of the products, while duck down accounted for 83.2%, of the down used in 190 down jackets sampled.

22.     The main indicator of down quality is the fill power, which is correlated to the

maturity of a bird. The longer a duck/goose is allowed to mature, the higher fill power down (measured in cubic inches per ounce) it will produce.

23.    Fill power refers to how much volume the down expands into, which usually ranges from 300 to 900 cubic inches per ounce, with exceptional quality down going up to 1000 in cubic inches per ounce[1]. High fill power down provides better thermal insulation at a lower weight.

24.    Goose down is known as the gold standard of weather insulation as it usually provides a higher fill power compared to duck down.

25.    Similar thermal performance to high-fill power down can be achieved by using more low-fill power down, but this results in a heavier jacket.

26.    The majority of the jackets from Canada Goose uses duck down with a fill power of 625 cubic inches per ounce which is on the lower end of the fill power spectrum for a luxury brand that emphasizes its warmth and quality of materials.

27.    To make up for the use of suboptimal materials, Canada Goose fills up its jackets with more down, increasing the fill weight and giving the consumers the illusion of better thermal performance by its substantiality[2].

28.    The flagship Canada Goose Jacket, the Expedition Parka has the highest thermal rating on its website and is intended for temperatures around or below -22°F. The jacket uses 625 cubic inches per ounce duck down fill and comes in at 4.46 lbs.

29.    At less than half of Canada Goose's price, a similar jacket from Feathered Friends, the Khumbu Down Parka is rated for temperatures of around -40°F. It contains the highest quality, 900+ cubic inches per ounce down fill weighing only 2.11 pounds. Accordingly, CANADA

---

[1] https://triplefatgoose.com/blogs/down-time/a-guide-to-down-jacket-warmth-down-fill-power-vs-down-weight
[2] https://www.youtube.com/watch?v=dwBJHMHfiD0

GOOSE US, INC. is not in fact using the "highest quality" materials to produce lighter jackets but is largely using substandard materials and attempting to conceal that fact

30.     Plaintiff, and upon information and belief the Class members, was misled by the representation that CANADA GOOSE US, INC. uses the "highest quality" products, combined with the representation that its products contain Hutterite down, the company's name, and the company's logo (a stylized representation of the Arctic ocean, surrounded by the words "CANADA GOOSE" and "ARCTIC PROGRAM"), and the products being advertised as "Extreme Weather Outerwear." These elements together gave Plaintiff the false impression that the products contain entirely or largely goose down and so would be exceptionally high quality.

31.     Because of CANADA GOOSE US, INC.'s false and misleading advertising, Plaintiff purchased two CANADA GOOSE US, INC. down jackets, one for himself and one for his wife, each costing about $1,050.00 in or around 2019 at Canada Goose's New York store in SoHo at 101 Wooster Street, New York, NY 10012 and Saks Fifth Avenue at 611 5th Avenue, New York, NY 10022.

32.     Comparable down jackets containing similar duck or goose down retail for approximately $200.00to $500.00.

33.     Plaintiff, and the class members, paid substantial premiums of over $800.00 per jacket based on the false impression created by Defendant's advertising.

34.     Consumers seek, and will pay a premium for, down jackets that are of exceptionally high quality.

35.     Consumers lack the ability to test or independently ascertain the accuracy of a brand name and label, especially at the point of sale. Reasonable consumers must and do rely on the company to honestly report the nature of a product's characteristics.

36.     By deceiving consumers about its Products, Canada Goose is able to sell a greater volume of the Products, to charge higher prices for the Products, and to capture market share away from competing products, thus increasing its own sales and profits.

37.     Because Defendants' labeling and advertising of the Products tend to mislead and are materially deceptive about the true nature, quality, source, of the Products, Plaintiff LIN brings this deceptive advertising case on behalf of himself and all others similarly situated and seeks monetary and injunctive relief, including an order to halt Defendant's false marketing, labeling and sale of its products.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this lawsuit, both individually and as a class action on behalf of similarly situated purchasers of the Products pursuant Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The proposed Class is defined as:

> All persons in the United States who purchased Canada Goose Products.

Excluded from the proposed Class are Defendant, its respective officers, directors and employees, any entity that has a controlling interest in Defendant, and all of its respective employees, affiliates, legal representatives, heirs, successors, or assignees. Also excluded from membership in the Class is any Judge or Magistrate presiding over this action and members of their family. Any claims for personal injury or consequential damages, not otherwise permitted under the facts pled herein, are excluded.

39.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York, (the "New York Subclass").

40.     The Class and New Jersey subclass shall be referred to collectively throughout the Complaint as the Class.

41.      Plaintiff reserves the right to amend the Class definition as necessary.

42.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

*Numerosity*

43.     Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Costco's possession, custody, or control.

44.     While the exact number of Class members is presently unknown and can only be ascertained through discovery, Plaintiff believes that there are thousands of Class members based upon the fact that Costco is one of the largest, if not the largest, retailers in the world, with around seven hundred and forty nine (749) retail warehouses.

*Commonality*

45.     There are questions of law and fact common to the Class, which predominate over any individual issues, including:

a.      Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.      Whether Defendant's Products' "Canadian Hutterite down" claims are materially deceptive;

c.      Whether Defendant's Products'" claims concerning its down content is materially deceptive;

d.      Whether Defendant represented that charged a premium or was otherwise

unjustly enriched through a gain of market share for its Product;

      e.     Whether Defendant's conduct constitutes a breach of express warranty and/or implied warranty;

      f.     Whether Defendant's claims regarding its Product are deceptive or misleading;

      g.     Whether Defendant engaged in false, deceptive and/or misleading advertising;

      h.     Whether Defendant's conduct as alleged herein violates the consumer fraud statutes of the various States and the District of Columbia;

      i.     Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

      j.     Whether Plaintiff and Class members are entitled to declaratory and injunctive relief; and

      k.     Whether Defendant was unjustly enriched.

### *Typicality*

46.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.

47.    All the Class members were subject to the same corporate practices of Defendants, as alleged herein, Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member.

48.    Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

49.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent representing Plaintiff in both class action and consumer fraud cases.

*Superiority*

50.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of consumer fraud litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

51.     Unless a class is certified, Defendant will retain monies received as a result of its conduct that was wrongfully taken from Plaintiff and proposed Class members. Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the proposed Class and the general public will continue to be misled.

52.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the New York GBL §349
### brought on behalf of Plaintiffs and proposed New York subclass]

53.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

54.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

55.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

56.     There is no adequate remedy at law.

57.     Defendant misleadingly, inaccurately, and deceptively presents its Product to consumers, including Plaintiff.

58.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that contain material misrepresentations.

59.     Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

60.     Defendant's advertising and Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

61.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

62.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.


**COUNT II.**
**[Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the
Various States and District of Columbia
brought on behalf of Plaintiff and proposed class]**

63.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

64.     Plaintiff brings Count I individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

> a. the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;
>
> b. the Alaska Unfair Trade Practices and Consumer Protection Act, AS §45.50.471, *et seq.*;
>
> c. the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;
>
> d. the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;
>
> e. the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*; and the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;
>
> f. the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;
>
> g. the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;
>
> h. the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;
>
> i. the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;
>
> j. the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;
>
> k. the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;
>
> l. the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;
>
> m. the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;
>
> n. the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;
>
> o. the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;
>
> p. the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;
>
> q. the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;
>
> r. the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

s. the Louisiana Unfair Trade Practices and Consumer Protection Law, LSAR.51:1401, *et seq.*;

t. the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

u. the Maryland Consumer Protection Act, MD Code, Commercial Law, §13-301, *et seq.*;

v. the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

w. the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

x. the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

y. the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*

z. the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

aa. the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

bb. the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

cc. the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

dd. the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

ee. the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

ff. the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

gg. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

hh. the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

ii. the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

jj. the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

kk. the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

ll. the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

mm. the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

nn. the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

oo. the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

pp. the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

qq. the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;
rr. the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

ss. the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

tt. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

uu. the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

vv. the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

ww. the West Virginia Consumer Credit and Protection Act, W.Va.Code §46A-1-101, *et seq.*;

xx. the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

yy. the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

65.     Defendant's foregoing misrepresentations and omissions regarding the nature of its Product, are deceptive and/or unfair acts or practices prohibited by the consumer fraud statutes set forth above.

66.     Defendant intended to be deceptive and/or unfair to Plaintiff and the proposed Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Defendant provided accurate information, Plaintiff and

the proposed Class members would not have purchased the Product and paid a premium price to Dunkin' Donut's classic sandwiches.

67.     Defendant's practice of creating, approving and distributing advertising for Product that contained false and misleading representations regarding the nature of its Product for the purpose of selling them to Plaintiff and the proposed Class, as alleged in detail supra, is both an unfair act and deceptive practice prohibited by the foregoing statutes.

68.     Defendant intended to be deceptive and unfair to Plaintiff and the proposed Class through its unlawful representations.

69.     Defendant intended that Plaintiff and the proposed Class members rely on Defendant's misrepresentations as to the nature of its Product and Defendant omitted to disclose to or notify Plaintiff and the proposed Class.

70.     Plaintiff and the proposed Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the Dunkin' Donut Product after seeing Defendant's advertising.

71.     Had Plaintiff and the proposed Class members known the truth, they would not have purchased the Product at a premium.

72.     The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the sale of the Product to Plaintiff and the proposed Class members.

73.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT III.
### [Unjust Enrichment
### brought on behalf of Plaintiffs and proposed Class]

74.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75.     Plaintiff and members of the class conferred benefits on Defendants by purchasing the Products at a premium price.

76.     Defendant has knowledge of such benefits.

77.     By engaging in the conduct described above, Defendant has unjustly enriched itself and received a benefit at the expense of Plaintiff and the other members of the Class.

78.     Defendant appreciated the benefit and it would be inequitable for Defendant to retain this benefit because Defendant engaged in deceptive practices and false advertising, as fully alleged above.

79.     Plaintiff and members of the Class were unjustly deprived of payments because they would not have purchased, or would have purchased less of, or would have paid less for, the Products if the true facts had been known.

80.     Because it would be unjust and inequitable for Defendant to retain payments Plaintiffs and the Class made for Defendant's Products or to retain the price premium they charge for the Products, Plaintiffs and members of the Class are entitled to restitution for Defendant's unjust enrichment.

**COUNT IV.**

**[Violation of the Magnuson-Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.*
brought on behalf of Plaintiff and proposed Class]**

81.     Plaintiff brings this claim on behalf of the other members of the Class for violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.* (the "Magnuson-Moss Act").

82.     Upon certification, the Class will consist of more than 100 named Plaintiffs.

83.     The Magnuson-Moss Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Magnuson-Moss Act], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal equitable relief." 15 U.S.C. § 2310(d)(1).

84.     At all relevant times, Plaintiff and Class members were "consumers" as that term is defined in 15 U.S.C. § 2301 (3).

85.     At all relevant times, Defendant was a "supplier," as that term is defined in 15 U.S.C. § 2301(4), because it was a "person engaged in the business of making a consumer product directly or indirectly available to consumers."

86.     At all relevant times, Defendant was a "warrantor," as that term is defined in 15 U.S.C. §2301(5), because it was a "supplier or other person who gives offers to give a written warranty or who is or may be obligated under an implied warranty."

87.     The Products that Plaintiff and the Class members purchased were "consumer products," as that term is defined in 15 U.S.C. § 2301(6), because the Products were "tangible personal property which is distributed in commerce and which is normally used or personal, family, or household purposes."

88.     By reason of Defendant's breach of its express warranties regarding the Product, Defendant has caused economic damage to Plaintiff and the Class members and has violated the statutory rights due to them under the Magnuson-Moss Act.

89.     As a direct and proximate result of the foregoing, Plaintiff and the proposed Class have been damaged in an amount to be determined at trial.

### COUNT V.
### [Negligent Misrepresentation
### brought on behalf of Plaintiff and proposed Class]

90.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.     Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the class.

92.     In making the representations of fact to Plaintiffs and members of the class described herein, Defendants have failed to fulfill their duty to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

93.     Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiff and members of the class.

94.     Plaintiffs and members of the class relied upon these false representations and nondisclosures by Defendants when purchasing the Products, which reliance was justified and reasonably foreseeable.

95.     As a result of Defendant's wrongful conduct, Plaintiff and members of the class have suffered and continue to suffer economic loses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at the time of trial.

96.     As a direct and proximate result of the foregoing, Plaintiff and the proposed Class have been damaged in an amount to be determined at trial.

## COUNT VI.
### [Breach of Implied Warranty of Merchantability
### brought on behalf of Plaintiff and proposed Class]

97.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98.     Defendant is in the business of manufacturing, distributing, marketing and advertising the above listed products.

99.     Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiff and Class Members that the Products include Angus "Steak".

100.    Defendant breached the implied warranty of merchantability in that Defendant's Products' ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Products.

101.    The inability of the Defendant's Products to meet the label description was wholly due to the Defendant's fault, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

102.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## COUNT VII.
### [Breach of Implied Warranty of Fitness
### brought on behalf of Plaintiff and proposed Class]

103.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104.    Defendant knew or had reason to know that the Plaintiff and other Class Members were buying its Products with the specific purpose of buying products that contained premium Angus "steak".

105.    Plaintiff and the other Class Members, intending to eat a premium meat product, relied on the Defendant in selecting its Products to fit their specific intended use.

106.    Defendant held itself out as having particular knowledge of the Defendant's Products' ingredients.

107.    Plaintiff's and Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Products' ingredients.

108.    Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

109.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the Class, respectfully requests that this Court enter a judgment providing the following relief:

a)      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

b)      Designating Plaintiff as representative of the Class or the respective Subclass, and their undersigned counsel as Class Counsel;

c)      Entering judgment in favor of Plaintiff and the Class and against Defendant;

d)      Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

e)      Awarding Plaintiff and the Class restitution and any other equitable relief that may be appropriate;

f)      Awarding Plaintiff and the Class statutory damages in the maximum amounts provided by the law;

g)      Awarding Plaintiff and the Class punitive damages in accordance with proof and in amount consistent with applicable precedent;

h)      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

i)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: Flushing, NY
           December 6, 2021

                                    TROY LAW, PLLC
                                    *Attorneys for the Plaintiff, and potential Rule 23*
                                    *Class*

                                    */s/ John Troy*
                                    John Troy
                                    Tiffany Troy