**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x

JIA WANG LIN
*on behalf of himself and others similarly situated*

                                        Plaintiff,

                                                            **Case No: 21-cv-07614**

                        v.

CANADA GOOSE US, INC.
                                        Defendant.

--------------------------------------------------------------------x

---

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CANADA GOOSE US, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

---

TROY LAW, PLLC
*Attorneys for the Plaintiff, and proposed Rule 23 Class*
John Troy
Aaron Schweitzer
Tiffany Troy
41-25 Kissena Blvd., Suite 103
Flushing, NY 11355
Tel:    (718) 762-1324

# CONTENTS

Authorities..............................................................................................................................ii

Statement of Facts.................................................................................................................. 1

Legal Standard ...................................................................................................................... 6

Argument ............................................................................................................................... 8

    I.   The Second Amended Complaint is Adequately Pled ........................................... 8

  **II.**   **PLAINTIFF STATES A CLAIM UNDER N.Y. G.B.L. § 349 (COUNT I)** ............................... 8

    A.   Canada Goose's "Canada Goose," "Field-Tested 'Extreme Outerwear' Claim" and Hutterite Down Claims are materially Misleading .................................. 9

    B.   Plaintiff has alleged causation and has Article III Standing...................................... 15

  **III.**   **THE REMAINING CLAIMS SHOULD NOT BE DISMISSED** ............................................. 15

    A.   Plaintiff Pleads sufficient facts establishing the Elements of the non-New York causes of action and lacks standing to bring such claims ...................................... 15

    B.   Plaintiff's unjust enrichment claim is not Duplicative and is supported by the alleged facts (Count III).................................................................................................... 17

    C.   Plaintiff sufficiently alleges a negligent misrepresentation (Count V) ..................... 18

    D.   Plaintiff's claims for breach of implied warranty survives (Counts VI and VII)....... 19

    E.   Plaintiff's Breach of Express Warranty Claim Survives (Count VIII)...................... 21

    F.   The MMWA Claim Survives along with the express and implied warranty claims (Count IV).............................................................................................................. 23

    G.   Plaintiff has standing to pursue injunctive Relief..................................................... 23

  **CONCLUSION** ............................................................................................................. 24

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011)........................................ 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................... 6

*Avis Rent a Car Sys., Inc.*, 782 F.2d 381 (2d Cir. 1986)............................................................... 9

*Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ....................................... 9

*Bartolini v. Ashcroft*, 226 F. Supp. 2d 350 (D. Conn. 2002) ........................................................ 16

*Batista v. United States INS*, 2000 U.S. Dist. LEXIS 1647, No. 99 Civ. 2847 (S.D.N.Y. Feb. 22, 2000) .......................................................................................................................................... 15

*Belfiore v. Proctor & Gamble Co.*, 311 F.R.D. 29 (E.D.N.Y. 2015) .......................................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................ 6

*Bell v. Hood*, 327 U.S. 678 (1946).......................................................................................... 16, 17

*Carlson v. Principal Fin. Group*, 320 F.3d 301 (2d Cir. 2003)............................................... 16, 17

*Carter v. HealthPort Technologies, LLC*, 822 F.3d 47 (2d Cir. 2016)....................................... 6, 7

*Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-CV-3808 (CBA) (RER), 2018 WL 9346682, at *1 (E.D.N.Y. Sept. 17, 2018)........................................................................................................ 12

*Commonwealth Land Title Ins. Co. v. United States*, 759 F. Supp. 87 (D. Conn. 1991) ............. 16

*Dae Hyun Kim v. Ashcroft*, 340 F. Supp. 2d 384 (S.D.N.Y., 2004) ....................................... 15, 16

*Daley v. McNeil Consumer Prods. Co.*, 164 F. Supp. 2d 367 (S.D.N.Y. 2001)........................... 13

*Delgado v. Ocwen Loan Servicing, LLC*, No. 13 Civ. 4427 (NGG) (RLM), 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *1 (E.D.N.Y. Sept. 24, 2014) .................................... 10

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) ........................................................... 6

*Forman vv. Davis*, 371 U.S. 178 (1962) ........................................................................................ 8

*Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256 (11th Cir. 1997) .............. 16

*Heckert v. 2495 McCall Rd. Corp.*, 2008 U.S. Dist. LEXIS 12981 (M. D. Fla. Feb. 21, 2008) . 16, 17

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) ............................................................ 6

*Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240 (2d Cir. 1987) ................................... 8

*Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114 (2d Cir. 2017) ...................................................... 6

Lopez v. Arby's Franchisor, LLC, No. 19-CV-10074 (VSB), 2021 U.S. Dist. LEXIS 43838, at *1 (S.D.N.Y. Mar. 8, 2021) ............................................................................................................... 8

*Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020) (internal citations omitted) ......................................................................................................... 12, 15

*Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211 (S.D.N.Y. 2016) ................................... 6

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ................................................................ 6

*Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) ................................................................ 11

*Morrison v. Amway, Corp.*, 323 F.3d 920 (11th Cir. 2003) .......................................................... 17

*New York Dist. Attorney Investigators Police Benevolent Ass'n v. Richards*, 711 F.2d 8 (2d Cir. 1983) ......................................................................................................................................... 16

*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974) .............................................. 17

*Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46. F.3d 230 (2d. Cir. 1995) .................................... 8

*Simanonok v. Simanonok*, 787 F.2d 1517 (11th Cir. 1986) ......................................................... 16

*Sitt v. Nature's Bounty, Inc.*, No. 15 Civ. 4199 (MKB), 2016 U.S. Dist. LEXIS 131564, 2016 WL 5372794, at *1 (E.D.N.Y. Sept. 26, 2016) ............................................................................... 9

*Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010) ................... 16, 17

*Taylor v. Vt. Dep't of Educ.*, 2001 U.S. Dist. LEXIS 24933 (D. Vt. Apr. 4, 2001) ..................... 16

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06 Civ. 14245 (LTS) (MHD), 2007 U.S. Dist.

    LEXIS 28209, 2007 WL 1138879, at *1 (S.D.N.Y. Apr. 16, 2007) ........................................ 10

**Statutes**

28 U.S.C. § 1331 ............................................................................................................................. 15

Plaintiff JIA WANG LIN ("hereinafter Lin") respectfully submits this memorandum of law in opposition to Defendant CANADA GOOSE US, INC.'s ("Canada Goose") Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## STATEMENT OF FACTS

The following facts are drawn from the Second Amended Complaint, and incorporated and set forth below:

"The Federal Trade Commission requires that the general principles of the FTC act applies to down products. Jackets and vests must declare the actual down content." Second Am. Cmplt. ¶22. As an illustrative example, the FTC states that the: "The claim "nature's best insulation," accompanied by a picture of a goose, suggests to a consumer that the product is filled with goose down. According to the law, advertisers must have proof to back up express and implied claims that consumers would take from an ad." *See id.* ¶25.

"The FTC also makes clear that a producer may not 'shoot for the tolerance.' By way of illustration, if a manufacturer produces pillows labeled '50% down, 50% waterfowl feathers,' the FTC expects all or nearly all the pillows will be filled with 50% down and 50% waterfowl feathers. If all or a large portion of the pillows actually contain 45% down, the pillows must be relabeled '45% down.' A manufacturer that deliberately labels pillows with a higher percentage of down content than it intends to put into the product is acting deceptively." *Id.* ¶26.

Previously, the Shanghai Huangpu District Market Superintending Management Bureau has fined the Shanghai subsidiary of Canada Goose for making the misleading claim that: "Our down blends all contain Hutterite down, which is the best and warmest Canadian down" on the website of its flagship store. *See id.* ¶46. "The Bureau thus found that Canada Goose's statement that it features the 'best and warmest Canadian down' materially misleading to customers and

fined Canada Goose Shanghai 450,000 yuan for violating the *Advertising Law of the People's Republic of China* Article 4, paragraph 1: 'advertising shall not contain false or misleading content, shall not deceive, mislead consumers' of the provisions, constitutes an advertisement containing false content, deception, misleading consumer behavior." *Id.* ¶47.

"The Bureau found that the Shanghai subsidiary of Canada Goose sold a total of 190 models of down clothing in total. There are 18 product models of goose down with a down fill rating 800 (U.S. standards); 14 product models of goose down with down fill rating of 675 (U.S. standards); and 131 product models of duck down with down fill rating of 625 (U.S. standards) of duck down; and 27 product models of duck down with down fill rating of 750 (U.S. standards) of duck down." *Id.* ¶48.

"The Bureau thus calculated that goose down products with a fill power of 800 (U.S. standard) accounted for about 9.5%, goose down products with a fill power of 675 (U.S. standard) accounted for about 7.3%, duck down products with a fill power of 625 (U.S. standard) accounted for about 69%, and duck down products with a fill power of 750 (U.S. standard) accounted for about 14.2%." *Id.* ¶49.

"Under its 'Materials' page, 'Why we choose natural down:' section, Canada Goose features an icon of a 'goose' in connection with its down." *Id.* ¶29. In the image included underneath, the statement: "Down is the best natural source to provide the most warmth for the least weight."

"Canada Goose further misrepresented the nature of its 'extreme' luxury product by suggesting that their jackets had a superior fill power as a result of containing or being comprised solely of Hutterite down." *Id.* ¶34. "From 2014 to 2020, Canada Goose claimed that '[o]ur down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down

available, enabling us to manufacture lighter jackets without sacrificing warmth.'" *Id.* ¶35. "A reasonable consumer purchasing 'extreme' luxury wear field tested by scientists would expect that the luxury wear is in fact suited for 'extreme' weather from being made of goose down." *Id.* ¶36.

"Canada Goose (the company) advertised itself as a provider of 'extreme' outerwear that are 'created for and wear-tested by' scientists conducting research in the most remote corners of the Arctic." *Id.* ¶30. "According to Canada Goose's own website, the only 'Extreme' Thermal Experience Index category as for -30°C and below (or -22°F and below) ('Field-tested for the coldest place on earth.')" *Id.* ¶31. "The Canada Goose website features a "Thermal Experience Index$^{TM}$," reproduced below, which states: '[w]hether you're working up a sweat hiking trails, embarking on an urban adventure, or exploring the coldest places on Earth, we've developed the Thermal Experience Index (TEI) to help you find the right Canada Goose product for your body, your activities, and lifestyle.'" *Id.* ¶32.

"Under the materials and care section of each item, Canada Goose continues to falsely advertise that '[o]ur down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, **enabling us to** manufacture **lighter jackets without sacrificing warmth**' (emphasis added)." *Id.* ¶41. "In essence, Canada Goose is advertising that its down blends contain Hutterite down, which increases the fill power of the down blend." *Id.* ¶42. "The undue emphasis on the Hutterite origin of the down is materially misleading because the origin of the down in fact has no relationship to the down's fill power or thermal performance." *Id.* ¶43.

"Plaintiff, and upon information and belief the Class members, was misled by the above-referenced misrepresentations by CANADA GOOSE US, INC." *Id.* ¶65.

"Because of CANADA GOOSE US, INC.'s false and misleading advertising, Plaintiff purchased three CANADA GOOSE US, INC. down jackets, two for himself (Borden Bomber and Wyndham Parka) and one for his wife (Rossclair Parka), each costing about $1,050.00 in or around 2019 at Canada Goose's New York store in SoHo at 101 Wooster Street, New York, NY 10012 and Saks Fifth Avenue at 611 5th Avenue, New York, NY 10022." *Id.* ¶66.

"The Wyndham Parka contains a 625-fill duck down with a down to feather ratio of 80 to 20. On the Canada Goose official site, the Parka is advertised, as 'This slim-fitting style is designed to keep you warm in variab le conditions, featuring a removable down-filled hood with a shaping wire and removable ruff. Recessed rib-knit cuffs block cold air out, while double-stacked fleece-lined hand warmer pockets carry it all and add essential warmth. Customize your parka and extend the coverage of your hood with a variety of our interchangeable Hood Trim accessories', which led Plaintiff into purchasing the jacket." *Id.* ¶67.

"The Borden Bomber jacket uses 625-fill duck down with a down to feather ratio of 80 to 20. On the official Canada Goose website, the jacket is advertised as, 'Inspired by the pilots in Canada's North, the Borden Bomber provides durability, warmth, and mobility while remaining functional for everyday wear. This regular fit silhouette has a protective high-hip length. It's finished with stretch ribbed knit cuffs to lock in warmth.' *Id.* ¶68.

The Rossclair Parka uses 625-fill duck down. On the official website, the Rossclair Parka is advertised as "This mid-length parka is crafted from our durable Arctic Tech® fabric that's designed to face harsh elements. Wear it sleek and straight or tighten the adjustable waist to create an A-line silhouette, which helps keep icy drafts out. A longer back hem offers superior protection from cold and wind." *Id.* ¶69.

Although Canada Goose has since removed all mentions of Hutterite Down from its Website, during the period of which Plaintiff purchased the jackets, it was advertised as using the highest quality Canadian Hutterite down. *Id.* ¶70.

Comparable down jackets containing similar duck or goose down retail for approximately $200.00 to $500.00. *Id.* ¶71.

Plaintiff, and the class members, paid substantial premiums of over $800.00 per jacket based on the false impression created by Defendant's advertising. *Id.* ¶72.

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The Second Circuit has identified two types of Rule 12(b)(1) motions: facial and fact-based. *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56.

A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its

exhibits] allege[ ] facts that" establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Carter*, 822 F.3d at 57 (internal quotation marks and citation omitted).

**ARGUMENT**

## I.     THE SECOND AMENDED COMPLAINT IS ADEQUATELY PLED

Defendant finds issue with two paragraphs in Plaintiff's Second Amended Complaint, namely paragraphs 142-143. Plaintiff respectfully submits that the two paragraphs does not render the Second Amended Complaint inadequately pled under Fed. R. Civ. P. 8(a). As distinguished from *Lopez v. Arby's Franchisor, LLC*, the Complaint was not brought against multiple Defendants but rather a sole Defendant for whom detailed allegations are made in support of consumer fraud claims. The Complaint is sufficiently detailed, and specifically set out the claims that Plaintiff alleges are fraudulent, namely the (1) "Canada Goose" claim, (2) field-tested "extreme outerwear" claim, (3) Hutterite Down claim in the context of Canada Goose's Lifetime Warranty. *See* No. 19-CV-10074 (VSB), 2021 U.S. Dist. LEXIS 43838, at *10 (S.D.N.Y. Mar. 8, 2021).

If the Court inclines to find that Plaintiff did not plead sufficient facts to support his claims, Mr. Wang should be afforded with a chance to amend his statement of claims because justice so requires. Leave to amend a complaint shall be freely given "when justice so requires." *see Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46. F.3d 230, 234 (2d. Cir. 1995) (granting leave to amend four years after original complaint); *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987). The Supreme Court of the United States noted that a plaintiff ought to be afforded the opportunity to amend a complaint so long as there is no apparent undue delay, bad faith or dilatory motive on the part of the movant, or repeated failure to cure deficiencies by amendments previously allowed. *Forman vv. Davis*, 371 U.S. 178, 182 (1962).

## II.     PLAINTIFF STATES A CLAIM UNDER N.Y. G.B.L. § 349 (COUNT I)

In Plaintiff's Second Amended Complaint, Plaintiff adequately pleads that Canada Goose made three consumer-oriented, materially misleading claims that led to injury to him as well as the Class. Defendant focuses on the single statement: "Our down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, enabling us to manufacture lighter jackets without sacrificing costs," *See* Docket Entry No. 31 Defendants' Memorandum in Support of Motion to Dismiss ("Def's Br.") (citing Second Am. Cmplt. ¶35). As detailed *infra*, that is not the case. The case law shows that the statements must be evaluated altogether and not in isolation. *See*, *e.g.*, *Avis Rent a Car Sys., Inc.*, 782 F.2d 381, 385 (2d Cir. 1986) (courts are to consider an allegedly false "advertisement… in its entirety," and should "not… engage in disputatious dissection.") Defendant concedes that the Statement made by Canada Goose are "consumer-oriented" and focuses on whether the Statement is materially misleading and whether Plaintiff suffered an injury as a result of the statement.

### A. CANADA GOOSE'S "CANADA GOOSE," "FIELD-TESTED 'EXTREME OUTERWEAR' CLAIM" AND HUTTERITE DOWN CLAIMS ARE MATERIALLY MISLEADING

### 1. Read within Context, Canada Goose's Statements are Materially Misleading

In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020). As a threshold matter, contrary to Defendant's arguments, the context is that Canada Goose did not make the Statement that "Canada Goose holds out its product as being all-goose and 'containing or being comprised solely of Hutterite down'" as a standalone claim. *See* Def. Br. at *7-8.

"To establish that conduct is materially misleading, a plaintiff must demonstrate that a reasonable consumer would likely be misled by the alleged misrepresentation." *Sitt v. Nature's Bounty, Inc.*, No. 15 Civ. 4199 (MKB), 2016 U.S. Dist. LEXIS 131564, 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016). "Courts view each allegedly misleading statement in light of its

context on the product label or advertisement as a whole." *Belfiore v. Proctor & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Delgado v. Ocwen Loan Servicing, LLC*, No. 13 Civ. 4427 (NGG) (RLM), 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014)). "The entire mosaic is viewed rather than each tile separately." *Id.* (internal quotation marks omitted) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06 Civ. 14245 (LTS) (MHD), 2007 U.S. Dist. LEXIS 28209, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007)).

Rather, Canada Goose made a plethora of claims as part of its advertising campaign, and many of these claims are materially misleading to reasonable consumers. Its claims, as alleged in the Second Amended Complaint, falls into three bins: first, that its products are labeled as "Canada Goose"—misleading reasonable consumers to associate it with goose down outerwear made in Canada—fit for Arctic expeditions; second, that its products are not just outerwear, but field-tested extreme outerwear, and third, its Statement that its jacket is warm because it contains Hutterite down. Unlike in the Florida's Natural case, where "natural" occurred within the brand name "Florida's Natural" and nowhere else on the packaging, Canada Goose's outerwear makes additional claims, as set forth below, that are misleading. In that context, the Court cannot determine as a matter of law that a reasonable consumer cannot find the advertising scheme deceptive.

Canada Goose claims that its "'extreme' outerwear that are 'created for and wear-tested by' scientists conducting research in the most remote corners of the Arctic." *See* Second Am. Cmplt. ¶30. Canada Goose does not claim itself to only be a clothing manufacturer but rather a provider of luxury field-tested extreme outerwear, with a Thermal Experience Index[TM] which provides the ranges of temperatures that the parkas are fit for, including "Extreme" outerwear

that are fit for temperatures "-30°C and below". *See id.* ¶¶31-32. Its website features a "'Chat

with an Expert,' with the company's logo (reproduced below: a stylized representation of the

Arctic Ocean, surrounded by the words 'CANADA GOOSE' and 'ARCTIC PROGRAM'), and

the products being advertised as 'Extreme Weather Outerwear.'" *See id.* ¶33.

### 2. Reasonable Consumers Should Not Be Expected to Look Beyond the Misleading Representations at the Top of the Web Page

Defendant first argues, unpersuasively, that "[n]o reasonable consumer would conclude

that products containing 'down blends' are comprised 'solely' of goose down or, for that matter,

solely of Hutterite down." *See* Def. Br. at *8. Defendant's argument fails for two reasons: first,

in industry parlance, the "blend" in fact refers to component other than down, like feather, not

the *type* of bird (i.e. goose or duck). Second, the clarifying language "down blend" is not present

in the most prominent section on the "Materials" from which Canada Goose outerwear is made.

*See Mantikas v. Kellogg Co.*, 910 F.3d 633, 634 (2d Cir. 2018) (in the context of a consumer

fraud class action involving food, stating that "Reasonable consumers should not be expected to

look beyond misleading representations on the front of the box to discover the truth from the

ingredient list in small print on the side of the box. Instead, reasonable consumers expect that the

ingredient list contains more detailed information about the product that confirms other

representations on the packaging.") Defendants' argument that "at the *exact* same URLs where

each of those descriptions is found, the website (*see, e.g.*, SAC ¶ 41) expressly states that each of

the jackets Plaintiff alleges he purchased consisted of '625 Fill Power White *Duck Down*'" is

similarly unavailing under *Mantikas* because Plaintiff is not required to look beyond the front

page and description to "discover the truth from" the small print at the bottom of the web page.

910 F.3d at 633.

The down component claim in the present case is also distinguishable from Angus beef component claim in the beef patty case *Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-CV-3808 (CBA) (RER), 2018 WL 9346682, at *8 (E.D.N.Y. Sept. 17, 2018). Unlike an Angus beef sandwich in *Chen*, where an Angus beef patty which contained Angus beef is found to not be in violation of consumer laws, the down content is composed of feathers from duck or geese. The contention here is not that Canada Goose misrepresented the nature of its down by including fillers or that its jackets are deceptive because it included other materials but that Canada Goose engaged in a campaign of deceptive advertising, sales, and marketing practices as to the nature of the down used in its jackets. Instead, just like the FTC's illustrative example of "nature's best insulation" accompanied by a picture of the goose, Canada Goose used an icon of a goose in conjunction with the language "WHY WE CHOOSE NATURAL DOWN" and "Down is the best natural source to provide the most warmth for the least weight" to mislead consumers into believing that the down is made entirely or predominantly of goose down.

### 3. Defendant's Statements are Actionable

It is well established in New York that "a seller's mere general commendations of the product sought to be sold, commonly known as 'dealer's talk,' 'sales talk,' or 'puffery,' do not amount to actionable misrepresentations[.]" 60A William H. Danne, Jr., *N.Y. Jur.* § 34 (2d ed. 2003) ("*N.Y. Jur.*") (collecting cases). However, the doctrine of non-actionability for puffery does not apply "to false representations of material facts which are in their nature calculated to deceive and are made with the intent to deceive." 60A *N.Y. Jur.* § 34 (collecting cases). "The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) (internal citations omitted).

Here, the Statement makes material factual representations that are demonstrably false. In full, it reads: "[o]ur down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, **enabling us to** manufacture lighter jackets without sacrificing warmth."

In contrast to the line of cases that Defendant has cited, Defendant's alleged misrepresentation involved a statement about the fill power of Hutterite down, unduly emphasizing how the Hutterite origins of the down "enabled [Canada Goose] to manufacture lighter jackets without sacrificing warmth," even though the origins of the goose has no relationship to the quality of its down. "This emphasis has no factual basis because a down's thermal performance is tied only to the lifespan of the species to which the bird from which it is plucked belongs, and the maturity of the individual bird before it is plucked, and not (within a given species." *See id.* ¶¶53. *See Daley v. McNeil Consumer Prods. Co.*, 164 F. Supp. 2d 367, 376-77 (S.D.N.Y. 2001) (holding that affirmations of fact are distinguishable from puffery).

### 4. The Statement Placed Undue Emphasis on the Down's Hutterite Origins

Canada Goose claimed that "Our down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, enabling us to manufacture lighter jackets without sacrificing warmth," falsely and unduly emphasizing the Hutterite origin of the down as an indicator of its thermal performance. *See* Second Am. Cmplt. ¶¶ 18-19.

Defendant calls attention to Plaintiff's "admission" that the "Hutterite community has 'reputation for raising excellent *geese*" (emphasis added) and further states that "a party does not violate GBL 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." Defendant further states that "Plaintiff does not, and cannot allege that the Statement is given any special prominence."

Defendant's argument that "Plaintiff's reference to 'fill power' in an apparent attempt to try to connect on one hand, the Statement's reference to Hutterite down with, on the other, the Statement's reference to the products' high quality" is unavailing simply disregards how Defendant materially misrepresented the Hutterite origin *as the reason why* its jackets are *lighter* and *still warm*. As discussed, *supra*. However, as discussed *supra*, the "Bureau found that only down will a fill power of 800 and above can be considered 'high quality' down." The jackets purchased only have a fill power rating of 625 cubic inches, which is subpar.

Thus, the statement of Hutterite is materially misleading to the ordinary customer who purchase Canada Goose jackets with an inferior fill power and purchased at a premium compared with other jackets that do not advertise itself as containing Hutterite down. Canada Goose customers like Jia Wang Lin in fact purchase products at inflated prices believing that the down content consisted of goose, not duck. An investigation by the National Enterprise Credit Information Publicity System of the People's Republic of China found that Canada Goose deceptively claimed that it uses "Hutterite down" when in fact the main filling was ordinary duck down. The investigation found that the main filling was duck down. In fact, Canada Goose used lower quality duck down with a fill power of 625 cubic inches per ounce to make up for the low component percentage of higher quality goose down in its fill. *See id*. ¶¶ 26-28. Each of the parkas purchased by Plaintiff WANG are "625-fill duck down". *See id.* ¶67-69 (the Wyndham Parka, the Borden Bomber, and the Rossclair Parka). Plaintiff alleges that he was "mislead by the above-referenced misrepresentations by CANADA GOOSE US, INC." *See id.* ¶65. Such products are all branded with stylized representation of the Arctic ocean, surrounded by the words "CANADA GOOSE" and "ARCTIC PROGRAM"), and the products being advertised as "Extreme Weather Outerwear." *See id*. ¶¶ 30.

**B. PLAINTIFF HAS ALLEGED CAUSATION AND HAS ARTICLE III STANDING**

In order to plead a § 349 or § 350 claim successfully, Plaintiffs must allege that they saw the misleading statements of which they complain before they purchased or came into possession of products in question. *Lugones*, 440 F. Supp. 3d at 240. Plaintiff alleges that that he "was mislead by the above-referenced misrepresentations by CANADA GOOSE US, INC." *See id.* ¶65. Plaintiff further states that "Because of CANADA GOOSE US, INC.'s false and misleading advertising, Plaintiff purchased three CANADA GOOSE US, INC. down jackets, two for himself (Borden Bomber and Wyndham Parka) and one for his wife (Rossclair Parka), each costing about $1,050.00 in or around 2019 at Canada Goose's New York store in SoHo at 101 Wooster Street, New York, NY 10012 and Saks Fifth Avenue at 611 5th Avenue, New York, NY 10022." *See id.* ¶66.

Defendant's argument that Plaintiff lacks Article III standing must fail because it is dependent on a finding that Plaintiff "fails to adequately allege that he viewed the Statement prior to purchase." That fails, for the reasons set forth *supra*.

**III. THE REMAINING CLAIMS SHOULD NOT BE DISMISSED**

**A. PLAINTIFF PLEADS SUFFICIENT FACTS ESTABLISHING THE ELEMENTS OF THE NON-NEW YORK CAUSES OF ACTION AND LACKS STANDING TO BRING SUCH CLAIMS**

United States District Courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists where "(1) the claim turns on an interpretation of the laws of Constitution of the United States and (2) the claim is not 'patently without merit.'" *Dae Hyun Kim v. Ashcroft*, 340 F. Supp. 2d 384, 388 (S.D.N.Y., 2004) (quoting *Batista v. United States INS*, 2000 U.S. Dist. LEXIS 1647, No. 99 Civ. 2847, at *3 (S.D.N.Y. Feb. 22, 2000) (itself quoting *Bell v. Hood*, 327

U.S. 678, 683–85 (1946))). A claim is only patently without merit "when the right claimed is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy …." *Id.* at 391 (quoting *Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002) (itself quoting *New York Dist. Attorney Investigators Police Benevolent Ass'n v. Richards*, 711 F.2d 8, 10 (2d Cir. 1983)), internal quotation marks omitted). Courts have recognized that "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Heckert v. 2495 McCall Rd. Corp.*, 2008 U.S. Dist. LEXIS 12981, at *9 (M. D. Fla. Feb. 21, 2008) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997) (itself citing *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir. 1986))); *see also Commonwealth Land Title Ins. Co. v. United States*, 759 F. Supp. 87, 90 (D. Conn. 1991) ("the burden of establishing federal jurisdiction is not particularly onerous") and *Taylor v. Vt. Dep't of Educ.*, 2001 U.S. Dist. LEXIS 24933, at *27 (D. Vt. Apr. 4, 2001) ("the threshold to withstand a motion to dismiss under Rule 12(b)(1) is extremely low").

Jurisdictional inquiry under Article III and § 1331 "'depends entirely upon the allegations in the complaint' and asks whether the claim as stated in the complaint 'arises under the Constitution or law of the United States.'" *Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (quoting *Carlson v. Principal Fin. Group*, 320 F.3d 301, 306 (2d Cir. 2003)). Courts train an "exclusive focus" on the complaint in determining federal question jurisdiction, holding that "whether a plaintiff has pled a jurisdiction-conferring claim is a wholly separate issue from whether the complaint adequately states a legally cognizable claim for relief on the merits." *Id.* A well-pleaded claim under a federal law will always grant jurisdiction "unless the purported federal claim is clearly 'immaterial and made solely for the purpose of

obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Id.* (quoting *Carlson*, 320 F.3d at 306 (itself quoting *Bell*, 327 U.S. at 682–83)).

The onus is on the movant for dismissal to demonstrate "that the assertion of subject matter jurisdiction is 'so insubstantial, implausible, foreclosed by prior decisions of the [United States Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy'" *Heckert* at *9 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). While a movant may fairly rely on "extrinsic evidence such as testimony or affidavits" to persuade the Court, *Id.* at *10 (quoting *Morrison v. Amway, Corp.*, 323 F.3d 920, 924 (11th Cir. 2003), "a district court should only rely on its Rule 12(b)(1) authority to weigh and determine contested facts if the facts necessary to establish jurisdiction do not implicate the merits of the plaintiff's claim." *Id.* at *11, citing *Morrison*, 323 F.3d at 925.

Here, Plaintiff has pled sufficient facts to show that Defendant engaged in a course of deceptive conduct with national scope, charged a premium price for its "extreme" outerwear as containing Hutterite down when the only determiner of warmth was the lifespan of the goose or livestock. Further, Canada Goose product was made of inferior duck down in its down blends. More specifically, Plaintiff alleges that he has purchased 3 parka jackets in 2019 that used "625 fill duck down." *See* Second Am. Cmplt. ¶¶ 67-69. Plaintiff purchased these 3 parka jackets in reliance of "CANADA GOOSE US. INC.'s false and misleading advertising" *See id.* ¶¶34-43.

### B. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS NOT DUPLICATIVE AND IS SUPPORTED BY THE ALLEGED FACTS (COUNT III)

Plaintiff plead unjust enrichment in equity in addition to the contract and tort claim because Defendant Canada Goose was enriched at Plaintiff's expense. *See Hines v. Overstock.com, Inc.*, No. 09 CV 991 (SJ), 2013 U.S. Dist. LEXIS 117141, at *31-32 (E.D.N.Y. Aug. 19, 2013). Plaintiff must allege that "(1) the other party was enriched, (2) at his expense,

and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co.*, 19 N.Y.3d at 516.

Here, Plaintiff has pled that Canada Goose has bene unjustly enriched at his expense and it is against equity and good conscience to permit Canada Goose to retain the ill-gotten proceeds.

### C. PLAINTIFF SUFFICIENTLY ALLEGES A NEGLIGENT MISREPRESENTATION (COUNT V)

"A negligent misrepresentation is actionable under New York law where the defendant has been careless 'in imparting words upon which others were expected to rely and upon which they did or failed to act to their damage,' and whether the author of the statement has 'some relationship or duty . . . to act with care' vis-à-vis the party at whom the statement is directed." *Aetna*, 404 F.3d at 583 (quoting *White v. Guarente*, 43 N.Y.2d 356, 362, 372 N.E.2d 315, 401 N.Y.S.2d 474 (App. Div. 1977)). "The New York Court of Appeals has explained that: It is well settled that [a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 910 F. Supp. 2d 543, 546 (S.D.N.Y. 2012). Where "Plaintiffs have 'emphatically allege[d] the other two factors enunciated in *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264, 675 N.E.2d 450, 652 N.Y.S.2d 715 (1996)," the Courts have found that Plaintiffs' allegations are sufficient to survive a motion to dismiss.

First, as set forth *infra*, Defendants' claims are materially misleading.

Second, unlike the ordinary relationship between consumer and vendor, Canada Goose specifically advertised itself as a provider of "extreme" outerwear that are "created for and wear-tested by" scientists conducting research in the most remote corners of the Arctic. *See Colpitts v.*

*Blue Diamond Growers*, 527 F. Supp. 3d 562, 588 (S.D.N.Y. 2021). Canada Goose advertised itself as a provider of 'extreme' outerwear that are 'created for and wear-tested by' scientists conducting research in the most remote corners of the Arctic." *Id.* ¶30. "According to Canada Goose's own website, the only 'Extreme' Thermal Experience Index category as for -30°C and below (or -22°F and below) ('Field-tested for the coldest place on earth.')" *Id.* ¶31. "The Canada Goose website features a "Thermal Experience Index$^{TM}$," reproduced below, which states: '[w]hether you're working up a sweat hiking trails, embarking on an urban adventure, or exploring the coldest places on Earth, we've developed the Thermal Experience Index (TEI) to help you find the right Canada Goose product for your body, your activities, and lifestyle.'" *Id.* ¶32.

Third, as set forth *infra*, Plaintiff states that he has purchased the three Canada Goose parkas in reliance of the alleged misrepresentations.

Fourth, Plaintiff has set forth the misleading statements as well as why they are misleading in the Second Amended Complaint. *See id.* ¶¶ 14-74.

### D. PLAINTIFF'S CLAIMS FOR BREACH OF IMPLIED WARRANTY SURVIVES (COUNTS VI AND VII)

Notice is not a prerequisite for a breach of implied warranty claim. Further, Plaintiff's breach of implied warranty of merchantability claim (Count VI) survives because he adequately alleges Canada Goose's products are suitable for their ordinary purpose. And Plaintiff's breach of implied warranty of fitness (Count VII) fails because he does not allege facts sufficient to show he purchased the jackets for a "particular purpose," of which Canada Goose knew or should have known, outside of their ordinary purpose as outerwear.

### 1. Notice is not a prerequisite to Plaintiff's Breach of Implied Warranty Claim

To assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" N.Y. U.C.C. 2-607(3)(a). "The purpose of the [the notice requirement] is not to inform the seller of his own act, but to reveal to him that the buyer chooses to assert the act as a breach and seek a legal remedy therefor[,]" so that the seller need not bear the hardship of "allowing a buyer at any time within the period of the Statute of Limitations to assert that the goods are or were defective though no objection was made when they were received." *In re Gotham Silver Co*., 91 F. Supp. 520, 523 (S.D.N.Y. 1950) (Rifkind, J.) (citing 2 Williston on Sales, 2d Ed., 1259 (1924)) (internal quotation marks omitted). "[R]equiring notice is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." N.Y. U.C.C. § 2-607, cmt. *4*.

Here, the alleged fraud cannot be discovered through the regular use of the jacket because it involved fraud and deception as to the down content of the jacket in question. Thus, Plaintiff as a good faith buyer is timely in providing notice to the breach of the implied warranty claim by certified mail to the seller's attorney.

2. **Neither the Beach of Implied Warranty Claim (Count VI) or the Breach of Implied Warranty of Fitness Claim (Count VII) fails because Plaintiff alleges Particular Purpose for Which Canada Goose was or should have been aware and the Product were not Fit for their intended purpose**

Even in the absence of an express warranty, "a warranty that the goods shall be merchantable is implied in a contract for their sale." N.Y. U.C.C. Law § 2-314(1). "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection. . . . A merchant breaches the UCC implied warranty of merchantability if it sells goods that are not fit

for the ordinary purposes for which such goods are used." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (internal quotation marks and citations omitted).

Under New York law, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," there is an implied warranty that "the goods shall be fit for such purpose.'" N.Y. U.C.C. Law § 2-315; *see also Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016). Importantly, "the implied warranty of fitness for a particular purpose does not arise in every consumer sale, but only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." *Catalano*, 167 F. Supp. 3d at 558 (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986)).

Here, the Product fails to serve its intended purposes as "extreme" outerwear. *See* Second Am. Cmplt. ¶ 30.  According to Canada Goose's own website, the only "Extreme" Thermal Experience Index category as for -30°C and below (or -22°F and below) ("Field-tested for the coldest place on earth.") *See id.* ¶ 31.  Defendant, as the seller of the luxury "extreme" outerwear knows or has reason to know that the purchasers of its jackets intend to use the jackets.

### E.  PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM SURVIVES (COUNT VIII)

The Uniform Commercial Code (UCC), as adopted in New York, provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." UCC 2-313 (1)(a). To state a claim for breach of an express warranty under New York law, the plaintiff must allege that there was an "affirmation of fact or

promise by the seller, the natural tendency of which [was] to induce the buyer to purchase,' and that the warranty was relied upon." *Schimmenti v Ply Gem Indus.*, 156 AD2d 658, 659, 549 N.Y.S.2d 152 (2nd Dept. 1989) *quoting Friedman v Medtronic, Inc.*, 42 AD2d 185, 190, 345 N.Y.S.2d 637 (2nd Dept. 1973).

Defendant is incorrect to assert that Plaintiff's breach of express warranty claim should be dismissed. As a threshold matter, as Defendant has previously pointed out, there was no express warranty claim in the First Amended Complaint. Prior to the filing of the amended complaint, Plaintiff asserted the right to add the claim. Plaintiff is not a commercial buyer and has no means to reasonably discover the defect because it was hidden.

New York's Uniform Commercial Code states, in pertinent part: "(**a**) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. Law § 2-313 (2022).

As stated in the Second Amended Complaint, Canada Goose claimed that "[o]ur down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, **enabling us to** manufacture lighter jackets without sacrificing warmth." *See* Second Am. Cmplt. ¶ 35.

Canada Goose's express warranty further states as follows: "Our products are made with the highest quality materials and craftsmanship. Canada Goose products purchased from an authorized retailer are fully warranted against defects in materials and workmanship for the lifetime of the product. If a product ever fails due to manufacturing defect, we will repair the product free of charge, or we may choose to replace it. Please note, knitwear, accessories and collaborations are excluded from the Canada Goose warranty program, unless otherwise stated."

*See id.* ¶ 64. Plaintiff was misled by the above-referenced misrepresentations and purchased

three Canada Goose jackets in or around 2019. *See id.* ¶¶ 65-66. There is a breach of warranty

because in fact the down jackets contain a 625-fill duck down with a down to feather ratio of 80

to 20. *See id.* ¶¶ 65-66. Plaintiff "paid substantial premiums of over $800.00 per jacket based on

the false impression created by Defendant's advertising." *See id.* ¶¶ 71-72.

### F. THE MMWA CLAIM SURVIVES ALONG WITH THE EXPRESS AND IMPLIED WARRANTY CLAIMS (COUNT IV)

The Magnuson-Moss Warranty Act (MMWA) grants relief to consumers who are

damaged by the failure of a warrantor to comply with any obligation under a written warranty.

Under the statute, a written warranty is defined as any written affirmation of fact or written

promise which affirms or promises that such material will meet a specified level of performance

over a specified period of time. 15 U.S.C.S. § 2301(6)(A). At its core, however, the MMWA

merely incorporates and federalizes state-law breach of warranty claims, including state-law

standards for liability and damages. The MMWA creates no additional bases for liability, but

allows a consumer to recover damages under existing state law. *Cosgrove v. Or. Chai, Inc.*, 520

F. Supp. 3d 562, 569 (S.D.N.Y. 2021).

As such, Plaintiff incorporates by reference the arguments above as to the applicability of

the MMWA for both Plaintiff's implied and express warranty claims.

### G. PLAINTIFF HAS STANDING TO PURSUE INJUNCTIVE RELIEF

Contrary to Defendant's representation, Plaintiff has standing to seek injunctive relief

based on the allegation that the Canada Goose advertising is misleading to a reasonable

consumer." *See Ackerman v. Coca-Cola Co.*, 09-CV-395, 2013 U.S. Dist. LEXIS 184232, 2013

WL 7044866, at *2-3, *14-15, *15 n. 23 (E.D.N.Y. July 18, 2013) (report and recommendation)

(collecting cases) (plaintiff's possess Article III standing to seek injunctive relief in case involving New York General Business Law sections 349, 350 and a California consumer protection statutes). Plaintiff continues to be subject to Defendant's deceptive advertising campaign and have alleged facts sufficient to demonstrate that they might suffer harm if it continues. LIN purchased three Canada Goose down jackets for himself and his wife in or around 2019 for himself and his wife first at the Canada Goose Store and then at the Saks Fifth Avenue because of its brand name.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Defendant's Motion to Dismiss should be denied in its entirety.


Dated: March 30, 2022
Flushing, NY

Respectfully submitted,


/s/ John Troy
John Troy
