**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIA WANG LIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CANADA GOOSE US, INC.,<br><br>Defendant. | **21-cv-07614 (LGS)** |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS
ON BEHALF OF CANADA GOOSE US, INC.**

Chong S. Park (admitted *pro hac vice*)
**ROPES & GRAY LLP**
2099 Pennsylvania Ave. NW
Washington, DC 20006-6807
Tel: (202) 508-4631
Fax: (202) 383-8370
Chong.Park@ropesgray.com

Alexander B. Simkin
Matt Corriel
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
Alexander.Simkin@ropesgray.com
Matt.Corriel@ropesgray.com

Monica Mleczko (admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
Monica.Mleczko@ropesgray.com

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 2 |
| I. | THE COMPLAINT IS INADEQUATELY PLED | 2 |
| II. | PLAINTIFF FAILS TO STATE A CLAIM UNDER N.Y. GBL § 349 (COUNT I) | 3 |
| | A. Plaintiff Lacks Article III Standing and Has Not Alleged Causation | 3 |
| | B. The Statement Would Not Mislead a Reasonable Consumer | 4 |
| |     1. The Company Name Is Not Misleading | 4 |
| |     2. The Reference to "Extreme Outerwear" Is Not Misleading | 5 |
| |     3. There Is No "Undue Emphasis" on the Hutterite Origin of the Down, Let Alone a Misleading Emphasis | 6 |
| III. | THE REMAINING CLAIMS MUST ALSO BE DISMISSED | 7 |
| | A. The Non-New York Causes of Action Must be Dismissed (Count II) | 7 |
| | B. Plaintiff Fails to Allege Unjust Enrichment (Count III) | 8 |
| | C. Plaintiff Fails to Allege a Negligent Misrepresentation Claim (Count V) | 8 |
| | D. Plaintiff's Breach of Implied Warranty Claims Fail (Counts VI and VII) | 9 |
| | E. Plaintiff's Breach of Express Warranty Claim Fails (Count VIII) | 9 |
| | F. The MMWA Claim Fails (Count IV) | 10 |
| | G. Plaintiff Lacks Standing to Seek Injunctive Relief | 10 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   2013 WL 7044866 (E.D.N.Y. July 18, 2013)...............................................................10

*Axon v. Fla. Nat. Growers, Inc.*,
   813 F. App'x. 701 (2d Cir. 2020).................................................................................4

*Buonasera v. Honest Company, Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016).........................................................................10

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016)...........................................................................9

*Chen v. Dunkin' Brands, Inc.*,
   2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018) ..........................................................1, 2

*Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020) ........................................................................................2

*Colpitts v. Blue Diamond Growers*,
   527 F. Supp. 3d 562 (S.D.N.Y. 2021)...........................................................................8

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   387 F. Supp. 2d 265 (S.D.N.Y. 2004)...........................................................................6

*Forman v. Davis*,
   371 U.S. 178 (1962) ....................................................................................................3

*Hines v. Overstock.com, Inc.*,
   2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013)..............................................................8

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)...............................................................8

*Jaser v. NY Prop Ins. Underwriting Ass'n*,
   815 F.2d 240 (2d Cir. 1987) ........................................................................................3

*Jones v. Orgain, LLC*,
   2021 WL 4392783 (S.D.N.Y. Sept. 24, 2021)..............................................................5

*Ke v. J R SUSHI 2 INC, et al.*,
   2022 WL 912231 (S.D.N.Y. Mar. 28, 2022).................................................................2

*Lopez v. Arby's Franchisor, LLC*,
    2021 WL 878735 (S.D.N.Y. Mar. 8, 2021) ............................................................................3

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020) ..................................................................................4

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ..................................................................................................5

*Quintana v. B. Braun Med. Inc.*,
    2018 WL 3559091 (S.D.N.Y. July 24, 2018) .......................................................................5

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
    46 F.3d 230 (2d Cir. 1995) ....................................................................................................3

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007) ..................................................................................................6

**Statutes**

Fed. R. Civ. P. 9(b) .........................................................................................................................8

Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq*.) ....................................................2, 10

N.Y. Gen. Bus. Law § 349 .........................................................................................................3, 4

**Other Authorities**

Schofield, J., Indiv. R. III.C.2 ..........................................................................................................3

Defendant Canada Goose respectfully submits this reply brief in further support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC").[1]

## **PRELIMINARY STATEMENT**

Plaintiff does not deny that he largely copied the SAC from the complaint in *Chen v. Dunkin' Brands, Inc.* and continues his copy-and-paste approach through the wholesale lifting of pages of argument from briefing in that same case. Plaintiff offers no excuse for why the SAC—his third pleading—is so incoherent, especially since he waited nearly three years after allegedly purchasing the jackets to bring this lawsuit. While Plaintiff asks for leave to amend (again), he fails to propose any amendments that would cure any of the relevant pleading deficiencies.

While Plaintiff lacks Article III standing because he never alleges that he saw any of the allegedly misleading content on Canada Goose's website prior to making his brick and mortar purchase, his claims also fail on the merits. He admits that the Company's name does not, by itself, support an inference that all of Defendant's products are made solely with materials sourced from geese, but urges the Court to consider additional "context." This "context" further undermines his claim, including that: (i) Plaintiff fails to identify a single statement where Canada Goose claims to use only (or even primarily) goose down, (ii) the Statement in the SAC expressly refers to "down blends," (iii) Canada Goose's website, as quoted in the SAC, specifically states that its "natural down" comes from the "poultry industry," and (iv) the particular jackets Plaintiff allegedly purchased are clearly identified at the webpages he referenced and partially reproduced in the SAC as being "duck down"—suitable for "everyday use" and not "extreme" use (like some of Canada Goose's other products).

---

[1] Defined terms have the meaning ascribed to them in Canada Goose's opening brief, ECF No. 31 ("Brief" or "Br."). "Opposition" or "Opp." refers to Plaintiff's opposition brief, ECF No. 33.

Plaintiff's remaining claims likewise remain unsalvageable. Plaintiff does not respond to the arguments explaining why his non-New York state law claims should be dismissed and instead copies and pastes an argument from the *Chen* case about federal question jurisdiction. His unjust enrichment claim remains wholly duplicative of the other claims. His negligent misrepresentation claim continues to lack a special relationship, among other failings. After seeming to admit that his implied warranty claims fail, Plaintiff argues that they do not require pre-suit notice and, yet, cites authority explaining that they do. He attempts to recharacterize the ordinary purpose of his jackets as outerwear for "extreme" conditions, disregarding the allegations in the SAC acknowledging that the jackets he purchased were not advertised as fit for such conditions. He admits that his warranty of fitness claim fails unless Canada Goose knew Plaintiff bought the jackets for a particular purpose, but offers no facts suggesting any such awareness. His express warranty claim addresses Canada Goose's Lifetime Warranty about repairing manufacturing defects, which is not alleged to be false. And he effectively abandons his Magnuson-Moss Warranty Act ("MMWA") claim by failing to dispute that it requires at least 100 named plaintiffs. Finally, his claim for injunctive relief remains totally devoid of any indication of future harm.

In sum, the SAC should be dismissed in its entirety without leave to amend.

## ARGUMENT

### I. THE COMPLAINT IS INADEQUATELY PLED

Plaintiff does not contest that the SAC is largely a copy-and-paste drawn from the dismissed complaint filed by his counsel in *Chen v. Dunkin' Brands, Inc.*, 2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020).[2] To the contrary, his Opposition

---

[2] Since Canada Goose filed its motion to dismiss less than five weeks ago, Troy Law has been sanctioned in another case—this time for its "bad faith" in pursuing baseless claims. *Ke v. J R SUSHI 2 INC, et al.*, 2022 WL 912231, at *9-11 (S.D.N.Y. Mar. 28, 2022).

copies verbatim nearly two uninterrupted pages from the *Chen* opposition brief (and multiple other documents). *Compare* Opp. at 15-17 *with* Opp. Br. at 8-9, *Chen*, 2018 WL 1989781, ECF No. 22. His argument that Canada Goose "finds issue with two paragraphs" (*i.e.*, the two paragraphs where—even on his third pleading—Plaintiff still expressly refers to Dunkin' Brands) mischaracterizes Defendant's argument, which is focused on the SAC's failure as a whole to reasonably inform Canada Goose of the claims asserted. Plaintiff's effort to distinguish *Lopez v. Arby's Franchisor, LLC*, where the court dismissed a copy-and-pasted complaint, by arguing that *Lopez* involved multiple defendants is simply wrong: *Lopez*, like here, involved only one defendant. *See* 2021 WL 878735, at *1-2 (S.D.N.Y. Mar. 8, 2021).

As Plaintiff's own authority explains, leave to amend should *not* be granted where there is a "repeated failure to cure deficiencies by amendments previously allowed." *Forman v. Davis*, 371 U.S. 178, 182 (1962).[3] Plaintiff has had three chances to fix his Complaint (after three years to prepare it), including after Canada Goose's first pre-motion letter raised this issue. *See* Schofield, J., Indiv. R. III.C.2 ("The pre-motion letter and response will be taken into account in deciding whether further leave to amend will be granted…."). Leave to amend should be denied.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER N.Y. GBL § 349 (COUNT I)

### A. Plaintiff Lacks Article III Standing and Has Not Alleged Causation

Plaintiff does not dispute that he needs to allege facts establishing that he saw the alleged misstatement prior to purchase and that he suffered a concrete injury-in-fact as a result of it in

---

[3] *Rachman* is inapposite: it involved leave to amend an answer, not a complaint, and leave was granted because "the principal issue in the case changed," which has not occurred here. *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995). *Jaser* is even further afield: it remanded a case dismissed for lack of diversity with instructions to allow amendment in order to eliminate the dispensable, non-diverse defendant to restore diversity jurisdiction. *See Jaser v. NY Prop Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987).

3

order to have Article III standing and state a cause of action. Plaintiff refers to an asserted legal conclusion that he was misled by Canada Goose's "advertising" and "misrepresentations." Opp. at 15. But he does not dispute that the SAC lacks any factual allegation that he ever saw the Statement on the website prior to purchasing his jackets at brick-and-mortar stores. SAC ¶ 66. This deficiency alone warrants dismissal. *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) (holding that statements on a website were non-actionable where plaintiffs alleged they "checked" the website but failed to allege when they did so).

### B. The Statement Would Not Mislead a Reasonable Consumer

Plaintiff now purports to categorize his allegations into "three bins" of allegedly misleading statements on the Canada Goose website loosely tied to the Statement alleged to be false in the SAC: (1) the Company name; (2) that the Company's jackets are "field-tested extreme outerwear"; and (3) the "undue emphasis" put on the Hutterite origin of the down.[4] Opp. at 10. None substantiate a § 349 claim.

#### 1. The Company Name Is Not Misleading

Plaintiff concedes that, absent some additional "context," Canada Goose's name alone does not imply that Canada Goose exclusively sells products with all components sourced from geese. Opp. at 9-10; *Axon v. Fla. Nat. Growers, Inc.*, 813 F. App'x. 701, 705 (2d Cir. 2020).

Here, the added "context" helps Canada Goose, not Plaintiff. The Statement expressly refers to "down blends" and not goose down. SAC ¶¶ 35, 41.[5] The website excerpt copied into

---

[4] Plaintiff is not even consistent in what he alleges the Statement to have said. *Compare* SAC ¶¶ 35, 41 *with* Opp. at 9.

[5] Plaintiff argues that in "industry parlance" "[down] blend" refers to "component[s] other than down . . . not the *type* of bird." Opp at 11. First, this allegation is not in the SAC. Second, alleged "industry parlance" is not relevant to what a reasonable consumer would understand. Third, even accepting this unpled argument as true, it simply means the Statement is silent as to the type of bird—not a claim that only goose down is used.

4

the SAC expressly states that Canada Goose's "natural down" comes from the "poultry industry." SAC ¶ 29. Moreover, Plaintiff does not allege that he or anyone else did any testing on the jackets he purchased. He simply alleges that his jackets were made with duck down *because that is how they are advertised on the website*. *See* SAC ¶¶ 67-69; Br. at 9 n.6 (listing URLs).[6]

This case is a far cry from the hypothetical advertisement saying "nature's best insulation" accompanied by a picture of a goose and nothing else. SAC ¶ 24. This case is also different than *Mantikas*, where a box of crackers prominently advertised in large bold letters "made with whole grain" and then only disclosed in the fine print that it was made with relatively little whole grain. *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637-39 (2d Cir. 2018). Here, there is no allegation—other than the name of the Company—that Defendant advertised goose down on any packaging. *See Jones v. Orgain, LLC*, 2021 WL 4392783, at *4 (S.D.N.Y. Sept. 24, 2021) (*Mantikas* does not apply where plaintiff fails to allege misleading information appears on the front of packaging).

### 2. The Reference to "Extreme Outerwear" Is Not Misleading

Plaintiff alleges that Canada Goose advertises "extreme" outerwear fit for the Arctic. Opp. at 10; SAC ¶¶ 30-33. Plaintiff does not allege that any of the three jackets he purchased were advertised as such. To the contrary, Plaintiff admits that Canada Goose publishes a Thermal Experience Index ("TEI") on its website to help customers find the right jacket for their needs, be it "hiking trails, embarking on an urban adventure, or exploring the coldest places on Earth." SAC ¶ 32. The SAC states that the "'Extreme' Thermal Experience Index category," which bears a TEI rating of 5/5, "[i]s for -30°C and below." SAC ¶¶ 31-32. Plaintiff does not allege that any of the

---

[6] Plaintiff does not contest that the website is incorporated by reference into the SAC and properly considered in connection with this motion. *See Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, at *1 n.1 (S.D.N.Y. July 24, 2018) ("[A] court may consider the contents of a website that Plaintiff's complaint expressly incorporates by reference.").

5

three jackets he allegedly purchased carry the "Extreme" TEI rating of 5/5. To the contrary, the SAC reflects that they are all rated 3/5 ("Fundamental"), which means they provide "[f]undamental warmth fashioned for everyday use." SAC ¶ 32. This rating is stated twice on each jacket's webpage, which Plaintiff does not dispute he incorporated by reference into the SAC: first in the top panel, where customers select color, size, and other features; and second in a large, bold graphic that spans the entire width of the page and that uses color to make the relevant TEI rating obvious. *See* Br. at 9 n.6. No reasonable consumer could conclude that *all* of Canada Goose's jackets are intended for "extreme" conditions.

### 3. There Is No "Undue Emphasis" on the Hutterite Origin of the Down, Let Alone a Misleading Emphasis

Plaintiff does not dispute that "among the highest quality" and "high quality" constitute non-actionable puffery. He argues that there is a puffery exception for statements made with an intent to deceive, but there are no factual allegations that Canada Goose acted with such intent. Opp. at 12 (copying, without citation, the text of *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 276 (S.D.N.Y. 2004)). Moreover, Plaintiff does not dispute that the jackets he purchased had a "fill power rating" of 625 (precisely as advertised) or that the source on "fill power rating" he cited in the SAC says that jackets with a rating of 550 or more are "high quality." SAC ¶ 18, n.3. Plaintiff's reference to the opinion of a Chinese "bureau" that a fill power rating of 800 or more is "high quality," Opp. at 14, simply underscores why courts treat generic statements about a product being "high quality" as non-actionable opinion. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) (puffery is "understood as… [an] expression of opinion" (quotation marks omitted)).

Plaintiff also never explains what Canada Goose did to "emphasize" the Hutterite origin of the down beyond stating it once on the website, and admits that the Statement does *not* appear in

6

the "most prominent section" of the website. Opp. at 11. Plaintiff protests that the Hutterite origin of the down does not impact a jacket's "fill power rating," but the Statement does not say that it does. The clause "enabling us to produce lighter jackets without sacrificing warmth" refers to Canada Goose's use of "among the highest quality Canadian down available," and does not claim that the Hutterite origin of the down is the sole, or even primary, reason that it is of high quality. The plain meaning of the Statement is that Canada Goose makes lightweight warm jackets because it uses high quality down, not because the down comes from any particular source. In any event, Plaintiff admits that Canada Goose disclosed the specific "fill power rating" for each of the jackets he purchased (which he does not allege to be incorrect). SAC ¶¶ 67-69.

Finally, Plaintiff refers to a "management bureau" in China fining an alleged Chinese subsidiary of non-party Canada Goose Holdings, Inc., (based in Canada) approximately $70,000 under inapplicable Chinese marketing guidelines based on a statement on the website of a Chinese store that is materially different from the Statement alleged on the U.S. website. *Compare* Opp. at 1 (claiming use of "the best and warmest Canadian down") *with* Opp. at 3 (claiming use of "among the highest quality Canadian down available"). This fine simply has no relevance to the case at hand. The putative "investigation" by a Chinese "publicity system," Opp. at 14, is improperly raised as it does not appear in the SAC, and is equally irrelevant regardless.

### III. THE REMAINING CLAIMS MUST ALSO BE DISMISSED

#### A. The Non-New York Causes of Action Must be Dismissed (Count II)

Plaintiff does not dispute that (i) dismissal of Count I necessarily results in a dismissal of Count II, (ii) he lacks standing to bring claims on behalf of absent class members, (iii) he does not allege individual standing to pursue any non-New York law claims, and (iv) he fails to allege facts sufficient to establish the elements of the identified statutes. *See* Br. § III.A. Instead, Plaintiff devotes two pages to addressing federal question jurisdiction, an irrelevant issue Canada Goose

7

never raised. All but the last six lines of his argument on this issue are *word-for-word* copied from the failed opposition brief filed in *Chen*. Opp. Br. at 8-9, 2018 WL 1989781, ECF No. 22.

### B. Plaintiff Fails to Allege Unjust Enrichment (Count III)

Plaintiff does not dispute that his unjust enrichment claim is wholly duplicative of his other claims. Opp. at 17-18. This concession alone requires dismissal. *See* Br. § III.B. Plaintiff's half-hearted response consists of identifying the legal standard, conclusorily echoing the elements, and citing a single case *that dismissed the unjust enrichment claim. See Hines v. Overstock.com, Inc.*, 2013 WL 4495667, at *12 (E.D.N.Y. Aug. 19, 2013) (dismissing unjust enrichment claim).

### C. Plaintiff Fails to Allege a Negligent Misrepresentation Claim (Count V)

Plaintiff does not dispute that the heightened pleading standard under Rule 9(b) applies to his negligent misrepresentation claim. *See Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016). Nor does he make any effort whatsoever to satisfy that standard. Instead, he argues that he need not allege a special relationship if he "emphatically allege[s]" two other "factors" that he does not address. Opp. at 18. Plaintiff appears to be arguing that he can avoid pleading a special relationship where he "emphatically allege[s]" that Canada Goose (i) has "unique or special expertise" and (ii) knows "the use to which [its representation] would be put and supplied it for that purpose." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 588 (S.D.N.Y. 2021) (quotation marks and citation omitted). But Plaintiff has not even tried to allege that Canada Goose held such knowledge with respect to Plaintiff. To plead "unique or special expertise," he must plead that the Statement "involved scientific, technical, or non-public information," which he does not do. *Id.* Neither does Plaintiff allege that Canada Goose knew the purpose, if any, to which Plaintiff would put the Statement. Finally, Plaintiff does not address the other elements of a negligent misrepresentation claim and fails to identify a single fact in the SAC that, if true, would establish that Plaintiff relied on any alleged misrepresentation to his detriment.

8

### D. Plaintiff's Breach of Implied Warranty Claims Fail (Counts VI and VII)

*First*, Plaintiff admits that "Canada Goose's products are suitable for their ordinary purpose" and that he "does not allege facts sufficient to show he purchased the jackets for a 'particular purpose.'" Opp. at 19. *Second*, his assertion that pre-suit notice is not required is contrary to the authority he cites. *Id.* at 19-20. *Third*, his contention that pre-suit notice was impossible because Plaintiff could not have determined the actual down content of his jackets is belied by the fact that all Plaintiff did to determine the down content of his jackets was *look at the website*. *See* SAC ¶¶ 67-69. Plaintiff's argument that notice was impossible is further undercut by his assertion that he gave notice four months after the case had been pending. *Id.* ¶ 74. *Fourth*, while Plaintiff baselessly attempts to recharacterize the ordinary purpose of his jackets from outerwear to "extreme outerwear," this ignores his own allegation that only certain Canada Goose products are represented as being fit for "extreme" conditions and he purchased jackets intended for "everyday use." *See id.* ¶¶ 31-32 (explaining TEI and reproducing a TEI graphic for non-extreme "fundamental" jackets like those he purchased). *Finally*, Plaintiff concedes his warranty of fitness claim must fail unless Canada Goose had reason to know his particular purpose for buying the jackets, and he offers no facts showing that Canada Goose knew he was purchasing the jackets, let alone for what purpose. *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 558 (S.D.N.Y. 2016) (dismissing implied warranty claims because plaintiff "does not and cannot allege that defendants knew of any particular purpose for which he was buying his vehicle"). Therefore, the implied warranty claims fail.

### E. Plaintiff's Breach of Express Warranty Claim Fails (Count VIII)

Plaintiff does not dispute that he failed to provide pre-suit notice, and his argument that he had no means to reasonably "discover the defect" is belied by the fact that all he did to "discover" that his jackets were 625-fill duck down was look at Canada Goose's website. SAC ¶¶ 67-69.

Plaintiff's Opposition identifies the "express warranty" at issue as Canada Goose's "lifetime warranty," which contains a promise to repair or replace certain products if they "fail[ ] due to a manufacturing defect," Opp. at 22, but there is no allegation in the SAC that this warranty is false. Moreover, beyond repeating conclusory allegations, Opp. at 22-23, the Opposition does not even address the remaining elements—reliance, breach, or injury. *See* Br. § III.E.

### F. The MMWA Claim Fails (Count IV)

Plaintiff does not dispute that his MMWA claim fails because the SAC names fewer than 100 plaintiffs. *See* Br. § III.F. Moreover, he concedes that the MMWA "creates no additional bases for liability" and so this claim must fail where his other warranty claims do. Opp. at 23.

### G. Plaintiff Lacks Standing to Seek Injunctive Relief

In lieu of alleging future harm or the elements of an injunction, Plaintiff relies on *Ackerman v. Coca-Cola Co.* for the discredited proposition that merely alleging a consumer fraud claim confers standing for injunctive relief. Opp. at 23-24 (citing 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013)). *Ackerman* has been squarely rejected in this Circuit. *See, e.g.*, *Buonasera v. Honest Company, Inc.*, 208 F. Supp. 3d 555, 565 n.3 (S.D.N.Y. 2016) ("[T]he Court declines to follow the reasoning in *Ackerman* as Second Circuit precedent dictates otherwise."). Moreover, Plaintiff's only suggestion of future harm is that he "continues to be subject" to a Statement he admits *is no longer on the Company's website*. Opp. at 24; SAC ¶ 40 ("[I]n December 2021, Canada Goose . . . removed all mentions of Hutterite Down from its official website.").

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Complaint fails to state a claim and should be dismissed with prejudice.

10

Dated: April 12, 2022					By:	*/s/ Chong S. Park*

                Chong S. Park (admitted *pro hac vice*)
                **ROPES & GRAY LLP**
                2099 Pennsylvania Ave. NW
                Washington, DC 20006-6807
                Tel: (202) 508-4631
                Fax: (202) 383-8370
                Chong.Park@ropesgray.com

                Alexander B. Simkin
                Matt Corriel
                **ROPES & GRAY LLP**
                1211 Avenue of the Americas
                New York, NY 10036-8704
                Tel: (212) 596-9000
                Fax: (212) 596-9090
                Alexander.Simkin@ropesgray.com
                Matt.Corriel@ropesgray.com

                Monica Mleczko (admitted *pro hac vice*)
                **ROPES & GRAY LLP**
                Prudential Tower
                800 Boylston Street
                Boston, MA 02199-3600
                Tel: (617) 951-7000
                Fax: (617) 951-7050
                Monica.Mleczko@ropesgray.com

                *Counsel for Defendant*
                *Canada Goose US, Inc.*