```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JIA WANG LIN,                                                 :
                                Plaintiff,                    :
                                                              :      21 Civ. 7614 (LGS)
                -against-                                     :
                                                              :      OPINION AND ORDER
CANADA GOOSE US, INC.,                                        :
                                Defendant.                    :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Jia Wang Lin, individually and purportedly on behalf of all others similarly situated, brings this action alleging Defendant Canada Goose US, Inc. engaged in a campaign of deceptive marketing practices to sell their down-filled jackets. The Second Amended Complaint (the "SAC") alleges: (1) violations of New York General Business Law ("NY GBL") § 349, (2) violations of similar state consumer fraud laws, (3) unjust enrichment, (4) violations of the Magnuson-Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.*, (5) negligent misrepresentation, (6) breach of implied warranty of merchantability, (7) breach of implied warranty of fitness, and (8) breach of express warranty. Defendant moves to dismiss the SAC for lack of subject matter jurisdiction and failure to state a claim pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion to dismiss is granted.

I.   BACKGROUND

A.   Facts

The following facts are taken from the Complaint and are assumed to be true only for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

Defendant is "a leading manufacturer of performance luxury apparel" and "manufactures winter clothing products . . . the majority of which contain down."  In or around 2019, Plaintiff purchased three of Defendant's down jackets, two for himself, a "Borden Bomber" and a "Wyndham Parka," and one for his wife, a "Rossclair Parka."  Each jacket cost approximately $1,050.00 and was purchased at either Canada Goose's New York store at 101 Wooster Street, New York, NY 10012 or Saks Fifth Avenue at 611 5th Avenue, New York, NY 10022.

Plaintiff points to several of Defendant's statements that allegedly misled him about the quality of Defendant's jackets, all related to either the "fill power" of the jackets or the origin of the down used, including:

- Defendant "further misrepresented the nature of its 'extreme' luxury product by suggesting that their jackets had a superior fill power as a result of containing or being comprised solely of Hutterite down."

- From 2014 to 2020, Defendant claimed that "[o]ur down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, enabling us to manufacture lighter jackets without sacrificing warmth." (Emphasis removed).

- "Under the materials and care section of each item," Defendant advertise[d] that "[o]ur down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, enabling us to manufacture lighter jackets without sacrificing warmth."  (Emphasis removed).

Plaintiff asserts that "[t]he undue emphasis on the Hutterite origin of the down is materially misleading because the origin of the down in fact has no relationship to the down's fill power or thermal performance."  Plaintiff claims that "[t]his is not the first time that Canada Goose was fined for bogus claims about the nature of the Hutterite origin of its down," citing a January 2021 Administrative Penalty Decision Letter issued by a Chinese regulator to the Shanghai subsidiary of Canada Goose.

As a result of these representations, Plaintiff and the purported other class members "paid substantial premiums of over $800.00 per jacket based on the false impression created by Defendant's advertising."

### B.     Procedural History

Plaintiff commenced this action on September 12, 2021. On December 6, 2021, Plaintiff filed his Amended Complaint. On January 3, 2022, Defendant filed a pre-motion letter in anticipation of a motion to dismiss identifying several alleged deficiencies in the Amended Complaint, including Plaintiff's failure to identify whether he saw the allegedly misleading statements prior to purchasing Defendant's product. On January 7, 2022, Plaintiff responded to the pre-motion letter seeking leave to amend and responding to Defendant's arguments. On January 11, 2022, the Court granted leave to amend.

On February 1, 2022, Plaintiff filed the SAC seeking monetary damages and injunctive relief to halt Defendant's allegedly false marketing and sale of its down jackets. On March 9, 2022, Defendant moved to dismiss the SAC in its entirety.

## II.    STANDARD

### A.     Rule 12(b)(1)

An action is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Citizens for Resp. & Ethics in Wash. v. Trump*, 953 F.3d 178, 188 (2d Cir. 2019) (internal quotation marks omitted). When considering a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal quotation marks omitted). "A plaintiff asserting subject matter jurisdiction has the

burden of proving by a preponderance of the evidence that it exists." *Id.* (internal quotation marks omitted).  A court must resolve whether it has subject matter jurisdiction before it considers the merits.  *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *accord Zappin v. Collazo*, No. 19 Civ. 3781, 2020 WL 5646496, at *3 (S.D.N.Y. Sept. 22, 2020).

      B.      Rule 12(b)(6)

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Standing

Defendant asserts that, because Plaintiff lacks standing, the Court lacks subject matter jurisdiction. *See Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016); *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm."). A "particularized" injury "affect[s] the plaintiff in a personal and individual way." *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist"; it must be "real," and not "abstract." *Id.* at 340.

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and, "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 578 U.S. at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)).

Defendant's challenge to standing fails in light of the SAC's allegations that Plaintiff purchased the Defendant's products in reliance on the alleged misrepresentations and that he "and the class members, paid substantial premiums of over $800.00 per jacket based on the false impression created by Defendant's advertising." Allegations that a plaintiff suffered a financial

5

injury by paying a premium for a product bearing an allegedly misleading label are sufficient to establish an injury-in-fact. *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 92 (2d Cir. 2018); *see also Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) ("'[A]llegation[s] that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing.") (evaluating NY GBL § 349 claim); *DaCorta v. AM Retail Grp., Inc.*, No. 16 Civ. 1748, 2018 WL 557909, at *6 (S.D.N.Y. Jan. 23, 2018) ("The allegation that Plaintiff would not have made this purchase, or would not have paid the amount she did, is sufficient for Article III injury." (citations and internal quotation marks omitted)); *Borenkoff v. Buffalo Wild Wings, Inc.*, No. 16 Civ. 8532, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018) (finding sufficient allegation of an injury-in-fact where the plaintiff alleged that she would not have purchased the defendants' food had she known about how the food was prepared). Plaintiff therefore has adequately alleged an injury-in-fact for purposes of Article III standing.

  **B.** **NY GBL § 349**

The SAC's allegation of a violation of NY GBL § 349 fails to state a claim because the alleged misrepresentations would not mislead a reasonable consumer as a matter of law, and the SAC does not allege Plaintiff was injured "as a result" of the allegedly deceptive act or practice.

Section 349 of the New York General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GBL § 349(a). To state a claim under NY GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020).

### 1. Alleged Misrepresentations

To be misleading for purposes of § 349, a representation or omission must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *accord Hobish v. AXA Equit. Life Ins. Co.*, 98 N.Y.S.3d 38, 40 (1st Dep't 2019) (internal quotation marks omitted).  A court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (applying New York law); *Oswego Laborers' Loc. 214 Pension Fund*, 647 N.E.2d at 745.  "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (applying New York law).

### a. Hutterite Down

The SAC alleges that Defendant misleadingly holds out its products as having superior fill power by virtue of their use of Hutterite down, pointing to Defendant's statement that, "[o]ur down blends all contain Canadian Hutterite down, which is among the highest quality Canadian down available, enabling us to manufacture lighter jackets without sacrificing warmth."  The SAC does not contest that the jackets contain some amount of Hutterite down, but asserts that "the undue emphasis on the Hutterite origin of the down is materially misleading because the origin of the down in fact has no relationship to the down's fill power or thermal performance."  This argument fails, because the alleged undue emphasis, comprised solely of the statement that the use of certain down "enabl[es]" Defendant to manufacture higher quality products, is not materially misleading.

The most natural reading of Defendant's statement is that its use of "the highest quality Canadian down available," as compared to other Canadian downs, is what allows it to manufacture lighter jackets without sacrificing warmth. Plaintiff offers no allegations regarding other Canadian downs to indicate that this statement is false or misleading. Further, the statement is phrased in the comparative, i.e., Defendant can make "lighter" jackets than if it used other Canadian downs. The statement does not allege that Hutterite down is the lightest possible down available, and therefore, Plaintiff's allegations regarding the comparative strength of duck down are inapposite. The connection between the use of Hutterite down and Defendant's production of "lighter jackets without sacrificing warmth" is not misleading as a matter of law.

### b. "Extreme" Outerwear

Defendant's references to "extreme" outerwear similarly are not misleading based on their context. *See Chen*, 954 F.3d at 501. The SAC alleges that Canada Goose advertises "extreme" outerwear fit for the Arctic. The SAC also acknowledges Defendant's website includes a Thermal Experience Index ("TEI") to help customers compare Defendant's products, including assessing suitability for different activities (e.g., "hiking trails, embarking on an urban adventure, or exploring the coldest places on Earth"). The SAC includes a screenshot of the TEI's five ratings: "lightweight," rated to negative five degrees Celsius; "versatile," rated to negative fifteen degrees Celsius; "fundamental," rated to negative twenty degrees Celsius; "enduring," rated to negative twenty-five degrees Celsius; and "extreme," rated to negative thirty degrees Celsius. No reasonable consumer would understand these ratings to mean that all of Defendant's products were equally insulated or equally appropriate for "the most remote corners of the Arctic." Nor does the SAC allege that any of the jackets Plaintiff purchased carried the

highest TEI rating of "extreme" and failed to perform as expected. No reasonable consumer would be misled by Defendant's statements regarding its "extreme" outerwear.

### c. "Highest Quality"

Defendant's statements describing Canadian Hutterite down as "among the highest quality Canadian down available" amount to nonactionable puffery. *See Nadler v. Samadi*, 132 N.Y.S.3d 606, 607 (1st Dep't 2020) ("[T]he misstatements identified by plaintiffs either are not material or are puffery and therefore do not describe deceptive conduct.") A reasonable consumer would recognize the words "high quality" as a "general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) (characterizing puffery as "[s]ubjective claims about products, which cannot be proven either true or false."); *see also Matter of Sundial Growers, Inc. Sec. Litig.*, 138 N.Y.S.3d 330, 330 (1st Dep't 2021) (concluding that statements in offering materials related to 'high quality" and "premium" products were non-actionable puffery or, in the alterative, nonactionable opinion).

Plaintiff responds that Defendant's statements were misleading because they suggest that Hutterite down is an indicator of a jacket's thermal performance. Plaintiff emphasizes "fill power" as the correct indicator of quality, relying on a Chinese regulator's findings that only "a fill power of 800 and above can be considered 'high quality.'" This argument misses the mark. Plaintiff does not dispute that the jackets he purchased had a "fill power rating" of 625 -- apparently as advertised. Nor do allegations in the SAC regarding fill power metrics transform

9

the "high quality" statement into something more than Defendant's subjective claim about the value of its product.[1]  *See Time Warner Cable, Inc.*, 497 F.3d at 159.

The SAC fails to allege that any of the statements at-issue would materially mislead a reasonable consumer.

### 2. Causation — Injury "as a result"

Even if the representations were misleading, the NY GBL § 349 independently fails because the SAC does not allege causation, i.e., that Plaintiff suffered injury "as a result of the allegedly deceptive act or practice."  *See Plavin*, 146 N.E.3d at 1168.

Here, the SAC merely alleges that "during the period of [sic] which Plaintiff purchased the jackets, it was advertised as using the highest quality Canadian Hutterite down."  These allegations fall short because they do not include that Plaintiff saw the misrepresentations prior to his purchase and therefore made the purchases "as a result" of the misrepresentations.  *See, e.g., Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) (dismissing NY GBL § 349 claim where "[p]laintiffs allege that they checked Defendant's website, but . . . d[id] not allege that they viewed [the representation] prior to purchasing [the product]"); *Quintana v. B. Braun Med. Inc.*, No. 17 Civ. 6614, 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (dismissing NY GBL § 349 where complaint's "allegations d[id] not suggest [p]laintiff ever saw these statements and under what circumstances").[2]

---

[1]  The SAC references one of Defendant's competitors to provide background on fill power, but that website supports the view that there is not an objective standard for "high quality" in the industry.  *See Guide To Down Jacket Warmth: Down Fill Power vs Down Weight*, Triple F.A.T. Goose (last visited July 14, 2022), https://triplefatgoose.com/blogs/down-time/a-guide-to-down-jacket-warmth-down-fill-power-vs-down-weight ("When purchasing a high quality down fill jacket, you should look for a fill power rating of at least 550.").

[2]  Defendant raised this issue in its January 3, 2022, pre-motion letter in anticipation of a motion to dismiss the Amended Complaint, but the SAC was not amended to include allegations regarding if and when Plaintiff actually saw the statements prior to purchasing the jackets.

Plaintiff argues against dismissal because the SAC alleges that Plaintiff "was misle[d] by the above-referenced misrepresentations by CANADA GOOSE US, INC." and that "[b]ecause of CANADA GOOSE US, INC.'s false and misleading advertising, Plaintiff purchased three CANADA GOOSE US, INC. down jackets."  But general allegations that a plaintiff was misled are too conclusory to support a NY GBL § 349 claim.  Without allegations that Plaintiff actually saw the representations at issue, the NY GBL § 349 fails.  *See Lugones*, 440 F. Supp. 3d at 240 ("[R]epresentations that Plaintiffs do not claim to have seen before purchasing the [products] are non-actionable."); *Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004) ("If the plaintiff did not see any of these [misleading] statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury[.]").

Accordingly, the NY GBL § 349 claim is dismissed.

### C.     Unjust Enrichment

Plaintiff's unjust enrichment claim is dismissed.  To plead unjust enrichment, "a plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Metro. Bank & Tr. Co. v. Lopez*, 137 N.Y.S.3d 319, 321 (1st Dep't 2020) (internal quotation marks omitted).  Unjust enrichment is "not a catchall cause of action to be used when others fail."  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 312 (N.Y. 2018).  Unjust enrichment is proper only "in unusual situations" where there is no traditional contract or tort claim, and often where the defendant has done no wrong, but the "circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).  "Typical cases are those in which the defendant, though

11

guilty of no wrongdoing, has received money to which he or she is not entitled." *E.J. Brooks Co.*, 105 N.E.3d at 312. If the gravamen of the Complaint sounds in tort or contract giving rise to a traditional claim, then the unjust enrichment claim is improper. *See id.*

Here, Plaintiff has alleged a traditional tort under statutory and common law -- that Defendant misled him into purchasing Defendant's jackets. "To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello*, 967 N.E.2d at 1185. Plaintiff's unjust enrichment claim is dismissed because it is entirely duplicative of the other claims in the SAC. *See, e.g., id.*; *Ohanian v. Apple Inc.*, No. 20 Civ. 5162, 2022 WL 826415, at *4 (S.D.N.Y. Mar. 18, 2022) (applying New York law). All of the claims, including the unjust enrichment claim, are based on the theory that Defendant misrepresented the nature of its product by suggesting that their jackets had a superior fill power as a result of containing or being comprised solely of Hutterite down. Accordingly, the unjust enrichment claim is dismissed.

        **D.**        **Negligent Misrepresentation**

Plaintiff's negligent misrepresentation claim fails to state a claim because the statements were not misleading and the SAC fails to plead a "special relationship" between Plaintiff and Defendant. Under New York law, negligent misrepresentation claims require "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011); *accord Wallkill Med. Dev., LLC v. Catskill Orange Orthopaedics, P.C.*, 115 N.Y.S.3d 67, 71 (2d Dep't 2019). Negligent misrepresentation claims are subject to the heightened pleading standard under Rule 9(b). *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir.

2005); *accord Izquierdo v. Mondelez Int'l., Inc.*, No. 16 Civ. 04697, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016).

As discussed in the context of Plaintiff's NY GBL § 349 claim, *supra*, the SAC fails to allege the statements at issue were incorrect.

The negligent misrepresentation claim also fails because the SAC does not allege a "special relationship," and Plaintiff does not argue that such a relationship exists. "In the commercial context, a duty to speak with care exists when the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996) (internal quotation marks omitted); *accord Anderson v. Unilever U.S., Inc.*, No. 21 Civ. 3117, 2022 WL 2181575, at *10 (S.D.N.Y. June 16, 2022) (applying New York law). This "requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (citing *Kimmell*, 675 N.E.2d at 454). Because the SAC contains no allegations suggesting such a relationship, the negligent misrepresentation is dismissed.

### E. Breach of Warranty Claims

The SAC asserts state law causes of action for breach of express and implied warranty, as well as a claim under the MMWA. As described below, these claims are dismissed.

#### 1. Express Warranty

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2-313(1)(a). In order to establish a breach of express warranty under New York law, a plaintiff must show (1) a material statement constituting a warranty, (2) the buyer's reliance on this

warranty as a basis for their purchase, (3) breach of the warranty and (4) injury to the buyer caused by the breach. *See CBS Inc. v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997, 1000-01 (N.Y. 1990); *see also Bynum v. Fam. Dollar Stores, Inc.*, No. 20 Civ. 6878, 2022 WL 837089, at *6 (S.D.N.Y. Mar. 21, 2022) (applying New York law).[3]

Here, the SAC does not plead facts sufficient to show a breach of express warranty. The SAC alleges that Defendant provided "written express warranties . . . that: Canada Goose jackets are made of goose down, . . . [are] field tested extreme outerwear, [and] . . . consist[] of Hutterite down which increases the jacket's fill power." As discussed in the context of Plaintiff's NY GBL § 349 claim, Defendant's statements at issue explicitly refer to Canada Goose's use of "down blends" and do not warrant what the SAC alleges. *See, e.g., Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) (holding that "Vanilla Soymilk" did not amount to an express warranty that the product exclusively used natural vanilla because the label "does not state it is made exclusively with natural vanilla and a reasonable consumer would not interpret the representation of 'Vanilla Soymilk' to make this claim"); *Mazella v. Coca-Cola Co.*, 2021 WL 2940926, at *7 (S.D.N.Y. July 12, 2021) (dismissing the express warranty claim because plaintiff did "not plausibly plead facts to support the conclusion that the label 'Slightly Sweet' is a factual representation of the amount of sugar within the Product").

The SAC also fails to state reliance on any express warranty because there are no allegations that Plaintiff saw the statements at issue prior to purchasing the jackets. *See Oden v.*

---

[3] Under New York law, a plaintiff must also give notice of the breach to the seller before he can recover under an express warranty claim. *See* N.Y. U.C.C. § 2-607(3)(a) ("[B]uyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach."). "The notice requirement applies to consumer fraud actions." *Bynum*, 2022 WL 837089, at *6. "The U.C.C.'s notice requirement also applies to claims for breach of implied warranty." *Id.* at *7. The notice issue is not addressed because the SAC's warranty claims otherwise fail on the merits.

*Boston Sci. Corp.*, 330 F. Supp. 3d 877, 895 (E.D.N.Y. 2018) (dismissing express warranty claim where "complaint is "devoid of any facts that would permit the inference that [the p]laintiff actually read these statements and directly relied upon them when making the decision to utilize [the d]efendant's product"). As a result, the SAC fails to state a claim for breach of express warranty, and that claim is dismissed.

### 2. Implied Warranty of Merchantability

Under New York law, the "implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (applying New York law); *accord Brumfield v. Trader Joe's Co.*, No. 17 Civ. 3239, 2018 WL 4168956, at *3 (S.D.N.Y. Aug. 30, 2018). This standard "requires only that the goods sold be of a minimal level of quality," so that they are "fit for the ordinary purposes for which such goods are used." *Caronia*, 715 F.3d at 433-34.

Here, the SAC fails to state a claim for breach of implied warranty of merchantability because the SAC pleads nothing to suggest that the jackets at issue were unfit for their intended purpose as outwear. Plaintiff appears to argue that the jackets were unfit because they were not "extreme" outerwear as described. As discussed above, the SAC acknowledges that only Defendant's products with the highest TEI rating are represented as being fit for "extreme" conditions. Nowhere does the SAC allege that any of the jackets Plaintiff purchased carried the highest TEI rating of "extreme" and failed to perform as expected. Accordingly, the claim for breach of implied warranty of merchantability is also dismissed.

### 3. Implied Warranty of Fitness

"[T]he implied warranty of fitness warrants that goods shall be fit for 'any particular purpose for which the goods are required'" outside the goods' ordinary purpose. *Nemes v. Dick's Sporting Goods, Inc.*, 521 F. Supp. 3d 328, 340 (S.D.N.Y. 2021) (quoting N.Y. U.C.C. § 2-315). As the official commentary to U.C.C. § 2-315 notes:

> A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

N.Y. U.C.C. Law § 2-315 (Official Comment).

The SAC's failure to allege that Plaintiff purchased the products for a particular purpose other than to utilize the jackets as normal outerwear requires dismissal. *See, e.g., In re Lyman Good Dietary Supplements Litig.*, 2018 WL 3733949, at *11 (S.D.N.Y. Aug. 6, 2018) (dismissing implied warranty claim for failure to adequately allege that plaintiff communicated that he would use the product for a particular purpose). The only "specific purpose" alleged in the SAC appears to be included in error and copied from another complaint, stating that "Defendant knew or had reason to know that the Plaintiff and other Class Members were buying its Products with the specific purpose of buying products that contained premium Angus 'steak.'" Accordingly, Plaintiff's claim of implied warranty of fitness is dismissed.

### 4. Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"), "is a remedial statute designed to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." *Pyskaty v. Wide*

*World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017) (internal quotation marks omitted). "Jurisdiction under [the MMWA] is concurrent with the state courts." *Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) (summary order); *Brumfield*, 2018 WL 4168956, at *4 (same). In adjudicating claims under the MMWA, "courts should look to state law to determine the applicable measure of damages, which informs the amount in controversy." *Pyskaty*, 856 F.3d at 223 (brackets omitted). Accordingly, the MMWA "creates no additional bases for liability, but allows a consumer to recover damages under existing state law, and attorneys' fees." *Brumfield*, 2018 WL 4168956, at *4 (internal quotation marks omitted). "As a result, claims under the Act stand or fall with the express and implied warranty claims under state law." *Id.* (internal quotation marks omitted); *accord Cali v. Chrysler Group LLC*, No. 10 Civ. 7606, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011), *aff'd* 426 F. App'x 38 (2d Cir. 2011) (summary order). Because Plaintiff's claims for express and implied warranty are dismissed, the MMWA claim is also dismissed.

   **F.**  **Non-New York Causes of Action**

Because all of Plaintiff's individual claims are dismissed, the Court lacks jurisdiction over the putative class claims, which allege violations of various state consumer protection laws. *See Police and Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n.22 (2d Cir. 2013) ("[T]he jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs."); *Chen v. Dunkin' Brands, Inc.*, No. 17 Civ. 3808, 2018 WL 9346682, at *8 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020); *Derbaremdiker v. Applebee's Int'l*, No. 12 Civ. 1058, 2012 WL 4482057, at *9

n.9 (E.D.N.Y. Sept. 26, 2012), *aff'd* 519 F. App'x 77 (2d Cir. 2013) ("[A]lthough plaintiff asserts claims on behalf of potential class members that are predicated on other States' consumer protection laws, his complaint must be dismissed."); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 308 (S.D.N.Y. 2009) ("[C]ourts in this circuit have repeatedly held that, [i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.").

Accordingly, Defendant's motion to dismiss the SAC in its entirety is granted.

## IV.     LEAVE TO REPLEAD

A "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 247 (2d Cir. 2021) (internal quotation marks omitted). Plaintiff already has twice amended the complaint, did not request leave to replead in response to Defendant's pre-motion letter outlining its arguments, did not respond to Defendant's motion by saying how any deficiencies could be remedied, but nevertheless asked in a summary fashion for a third opportunity to amend. Plaintiff has had ample opportunity to amend, and it does not appear that any cause of action could be repleaded to remedy all of the deficiencies sufficient for the claim to survive. Application for leave to replead is denied.

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 30 and to close the case.

Dated: November 14, 2022
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**